312 F.2d 619
 136 U.S.P.Q. 286
 AMERICAN FOODS, INC., and R. D. Roberts, and R. D. Roberts
d/b/a Roberts Distributing Company, Appellants.
v.
GOLDEN FLAKE, INC., Appellee.
GOLDEN FLAKE, INC., Appellant
v.
AMERICAN FOODS, INC., and R. D. Roberts, and R. D. Roberts
d/b/a Roberts Distributing Company, Appellees.
 No. 19658.
 United States Court of Appeals Fifth Circuit.
 Jan. 23, 1963.
 
 John W. Gillon, Hugh P. Carter, Birmingham, Ala. (Spain, Gillon & Young, Birmingham, Ala., Jennings, Carter & Thompson, Birmingham, Ala., on the brief), for appellee-appellant.
 Claude A. Fishburn, Kansas City, Mo., Andrew W. Griffin, Birmingham, Ala. (Griffin & Wilson, Birmingham, Ala., Fishburn & Gold, Kansas City, Mo., on the brief), for appellants-appellees.
 Before RIVES, JONES, and BELL, Circuit Judges.
 GRIFFIN B. BELL, Circuit Judge.
 
 
 1
 Golden Flake, Inc., an Alabama corporation, brought suit against American Foods, Inc., a Texas corporation, and its distributor, a resident of Alabama, alleging trade-mark infringement. Jurisdiction was based on the Lanham Act. 15 U.S.C.A. 1121.[1] The cause of action was premised on confusion in trade as to the source of origin of the respective products of the parties. 15 U.S.C.A. 1114(1)(a).[2]
 
 
 2
 The District Court enjoined the use of the alleged infringing trade-mark by defendants in what was found to be the trade territory of plaintiff, Alabama, Folrida, Mississippi, Tennessee, Georgia and that part of the State of Louisiana east of the Mississippi River. 15 U.S.C.A. 1116.[3] Injunctive relief as to the remaining portions of the United States was denied. Defendants appealed from the order holding them as infringers and the injunction based on that holding. Plaintiff took a cross appeal from that part of the judgment refusing injunctive relief as to the remaining portions of the United States.
 
 
 3
 The registered trade-mark of plaintiff consisted of the words 'Golden Flake' and background design, the design being gold in color and somewhat in the shape of a potato chip with the words 'Golden Flake' written thereon. It was registered in 1924 under the trademark Act of 1905, renewed in 1944, and an unbroken chain of title to the mark and the goodwill represented by it was shown into plaintiff. It was registered for use in connection with the manufacture and sale of potato chips and horse-radish, and at least since 1936 it has been used continuously in connection with the sale of such items as potato chips, roasted peanuts, cooked popcorn, peanut butter, sweet and cheese cracker sandwiches, and similar food products. Plaintiff spent the sum of $746,409.74 from 1957 through September 1961 in direct advertising of goods sold under the trade-mark in the territories covered by the injunction. Such advertising was through the media of television, radio, and newspapers as well as by the use of billboards. Advertising was done for many years prior to this period although on a smaller scale.
 
 
 4
 The defendant American Foods, Inc. first commenced to use the expression 'Golden Flake' on refrigerated dinner rolls in January 1961 in conjunction with its mark 'Sun-Lite', and then in May or June 1961 in connection with another of its marks, 'Rainbo'. The defendant distributor commenced selling 'Rainbo Golden Falke Dinner Rolls' for American Foods, Inc. in Alabama and adjacent areas in July 1961, using newspapers and television as advertising media. Plaintiff's exhibit 22, one of the roll containers, indicates that the expression 'Golden Flake' is at least as prominent as the expression 'Rainbo'.
 
 
 5
 It was undisputed that the products in question, all falling into the food category, are sold in the same types of stores, and on occasion in the same locations in the stores, and in the main are purchased by housewives during the course of grocery shopping. There was evidence that housewives upon first seeing the name 'Golden Falke' on the dinner rolls assumed that the rolls were either put out by plaintiff or were in some way associated with plaintiff or its products which they had been accustomed to buying under plaintiff's trademark 'Golden Flake'. There was negative testimony on behalf of defendant, by way of a survey conducted in retail grocery stores, and from the testimony of witnesses of lack of confusion. The court concluded that there was likelihood of confusion or deception of purchasers if the use of the expression 'Golden Flake' was continued in connection with the sale of dinner rolls in the trade territory of plaintiff.
 
 
 6
 By way of answer to the complaint, defendants denied infringement, alleged no likelihood of confusion, questioned the validity of plaintiff's mark because of its use by other through licensing and otherwise, and alleged that the mark was weak for being a common generic term merely descriptive in nature and not entitled to broad protection even if valid. Having failed to sustain these contentions on the trial, they reassert them here.
 
 
 7
 Their position as defined is that the court erred in not finding and concluding at least that plaintiff had lost any exclusive rights it may have had in the mark for use on food products other than those on which it had specifically used the mark. Defendants also take the position that the findings and conclusions with respect to proof of the operative facts in issue were clearly erroneous as they related to the weight given the testimony of the various witnesses for plaintiff, the survey offered by defendants, and as the findings and conclusions relate to the consideration by the court of certain aspects of the design of the mark of plaintiff as compared to the mark on the containers used by defendants including the expression 'Rainbo Golden Flake Dinner Rolls' and the design of the dinner roll thereon. There is no dispute as to jurisdiction, or the applicability of the Lanham Act, 15 U.S.C.A. 1051 et seq.
 
 
 8
 The essential finding to be set aside if defendants are to prevail is that the use of the alleged infringing mark was likely to cause confusion as to the source of origin of the rolls of defendant, American Food, Inc. This is the statutory test, 15 U.S.C.A. 1114(1)(a), succeeding to what had theretofore been, in majority view, the court made test.[4]
 
 
 9
 We said in Pure Foods, Inc. v. Minute Maid Corp., 5 Cir., 1954, 214 F.2d 792, cert. den., 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 697:[5]
 
 
 10
 '* * *, it is true that an applicant registers a trade-mark in connection with particular goods specified in the certificate of registration, 15 U.S.C.A. 1051, 1057. Plaintiff's registered trade-mark is limited to frozen juice concentrates. The remedies of an owner of a registered trade-mark, however, are not limited to the goods specified in the certificate but extend to any goods on which the use of an infringing mark 'is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods".
 
 
 11
 And we pointed out that the Lanham Act adopted the principle set out in A.L.I. Restat.Law of Torts, Vol. III, 730, pp. 597, 598:
 
 
 12
 'One's interest in a trade-mark or trade name came to be protected against simulation, * * * not only on competing goods, but on goods so related in the market to those on which the trade-mark or trade name is used that the good or ill repute of the one type of goods is likely to be visited upon the other.'
 
 
 13
 The burden was on plaintiff in the first instance to show confusing similarity between the marks in question, but likelihood of confusion is a question of fact and where the facts are disputed as here, findings in that regard are not to be disturbed unless clearly erroneous. Chappell v. Goltsman, 5 Cir., 1952, 197 F.2d 837; and Pure Foods, Inc. v. Minute Maid Corp., supra. And, of course, it is the accepted rule that infringement may be established by showing only that confusion is likely, and there need be no showing of actual confusion or deception if the mark is of such character or is used in such a way as to likely confuse a prospective purchaser. Abramson v. Coro, Inc., 5 Cir., 1957, 240 F.2d 854. It is also settled that in making findings the District Court may rely not only on the evidence adduced on the trial but upon his own comparison of the marks. Coats v. Merrick Thread Co., 1893, 149 U.S. 562, 13 S.Ct. 966, 37 L.Ed. 847; 87 C.J.S. Trade-Marks, Etc. 205, p. 572.
 
 
 14
 The use of the same expression 'Golden Flake' plus the similarity in design that is plain from an examination of the marks, the fact that both were used on food products even though not directly competitive, the fact that the goods bearing the marks are sold in the same outlets to the same class of purchasers, and are advertised through common media, coupled with the long use and extensive advertising of the mark by plaintiff, together with the evidence of actual confusion adequately substantiate the finding of the court that there was likelihood of confusion or deception of purchasers if defendants continued to use the expression 'Golden Flake' as alleged. This made a case of trade-mark infringement. The proof established a colorable imitation of the mark of plaintiff as defined in the Lanham Act-- that the mark of defendant so resembles the registered mark of plaintiff as to be likely to cause confusion or mistake or to deceive purchasers. 15 U.S.C.A. 1127.
 
 
 15
 We hold that the mark of plaintiff was not invalid as being merely descriptive, and the question of weakness for this reason as asserted by defendants or the tangential answer to this by plaintiff of secondary meaning,[6] were both questions of fact implicit in the finding as to confusion. The weakness or strength of the mark merely goes to the determination of confusion or lack of it, and are relevant factors to be considered in connection therewith.
 
 
 16
 Both the pleadings and proof went fully into the question of invalidity or weakness resulting from registrations and use of the same expression as a mark by others. There was no evidence of a licensing by plaintiff. It did settle an opposition by it to a registration of 'Golden Flake' as a trade-mark by one selling buttermilk under it. But the settlement agreement was to the effect that there was in fact no confusion between the products of plaintiff and buttermilk. There had been registrations of 'Golden Flake' but all had expired except that of a baking company in Massachusetts. Although it had not been used in its trade territory, plaintiff had objected to the use of it and disposition of the objection was pending at the time of the trial. There was in addition one use of the expression on some form of rolls which was brought to the attention of plaintiff for the first time during the trial.
 
 
 17
 Abandonment is in the nature of a forfeiture, and the evidence disclosed that plaintiff was making reasonable efforts to protect its mark. Defendant failed to carry the burden of proving abandonment or partial abandonment by licensing and failure thereafter to control the quality of the goods and the trade-mark under the license, and through allowing use of this and similar marks by others. The proof no where near approximated the burden of strict proof applicable in forfeiture cases. E. I. Du Pont De Nemours & Co. v. Celanese Corporation of America, 1948, 167 F.2d 484, 35 CCPA 1061, 3 A.L.R.2d 1213; Annotation 3 A.L.R.2d 1226, 3, p. 1232, et seq.; and 87 C.J.S. Trade-Marks, Etc. 182e, p. 522.
 
 
 18
 The fact that defendants were in good faith and had no actual intention to mislead the public was not a defense but only a factor to be considered along with the other evidence. It is enough that such result is probable. Trappey v. McIlhenney Co., 5 Cir., 1922, 281 F. 23. Cf. Squirrel Brand Co. v. Barnard Nut Co., Inc., 5 Cir., 1955, 224 F.2d 840, cert. den.350 U.S. 995, 76 S.Ct. 545, 100 L.Ed. 860. The distributor was, in any event, fully familiar with the products, trademark and advertising program of plaintiff prior to beginning the distribution of the rolls bearing the infringing mark.
 
 
 19
 We are convinced from a careful consideration of the questions presented by defendants in the light of the record, exhibits and applicable law that the judgment of the District Court from which they appeal was warranted, and free of prejudicial error. This leaves for consideration the question of the cross-appeal of plaintiff.
 
 
 20
 Plaintiff contends that it was entitled to injunctive relief as to the entire United States rather than as it was afforded for its trade area only. Some ninety five per cent of the total business of plaintiff was done in Alabama with the remaining portion being done in the balance of the area included in the order. This was the situation after thirty eight years of doing business. There was no evidence presented that plaintiff might expand its business to other areas. Its advertising program covered no other area.
 
 
 21
 As the court noted in United Drug Company v. Theodore Rectanus Company, 1918 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, a trade-mark is not a right in gross or at large, nor is there property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The right to a particular mark grows out of its use and not its mere adoption. The law of trademarks is only a part of the broader law of unfair competition. See also Hanover Star Milling Company v. Metcalf, 1916, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713. And as was said in the United Drug v. Rectanus case:
 
 
 22
 'It results that the adoption of a trade-mark does not, at least in the absence of some valid legislation enacted for the purpose, project the right of protection in advance of the extension of the trade, or operate as a claim of territorial rights over areas into which it may thereafter be deemed desirable to extend the trade. * * *
 
 
 23
 'Undoubtedly, the general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question. * * * But the reason is that purchasers have come to understand the mark as indicating the origin of the wares, so tht its use by a second producer amounts to an attempt to sell his goods as those of his competitor. The reason for the rule does not extend to a case where the dame trade-mark happens to be employed simultaneously by two manufacturers in different markets separate and remote from each other, so that the mark means one thing in one market, and entirely different thing in another.'
 
 
 24
 Thus it was that the Supreme Court in these cases, and on the facts presented, permitted concurrent use of similar trade-marks in different areas, and it remains for us to decide if the Lanham Act, as plaintiff contends, wrought a change in this doctrine. The question is whether the Lanham Act supplied the legislation absent in those cases. Plaintiff relies on 15 U.S.C.A. 1057(b) and 1072 which provide, respectively, that a certificate of registration upon the principal register is prima facie evidence of validity of registration ownership, and exclusive right of use in commerce in connection with the goods specified in the certificate; and that such registration shall be constructive notice of the registrant's claim of ownership.[7]
 
 
 25
 The District Court in rejecting this contention relied on Dawn Donut Company v. Hart's Food Stores, Inc., 2 Cir., 1959, 267 F.2d 358, a concurrent use in separate areas case, where the rule was stated to be:
 
 
 26
 'The Lanham Act, 15 U.S.C.A. 1114, sets out the standard for awarding a registrant relief against the unauthorized use of his mark by another. It provides that the registrant may enjoin only that concurrent use which creates a likelihood of public confusion as to the origin of the products in connection with which the marks are used. Therefore if the use of marks by the registrant and the unauthorized user are confined to two sufficiently distinct and geographically separate markets, with no likelihood that the registrant will expand his use into defendant's market, so that no public confusion is possible, then the registrant is not entitled to enjoin the junior user's use of the mark.'
 
 
 27
 The court there went on to affirm the holding of the District Court that there was no present prospect that the plaintiff would extend its operations into the trading area f the defendant, and the denial of injunctive relief. See also Huber Baking Company v. Stroehmann Brothers Company, 2 Cir., 1958, 252 F.2d 945, cert. den. 358 U.S. 829, 79 S.Ct. 50, 3 L.Ed.2d 69; Anheuser-Busch, Inc. v. Bavarian Brewery Company, 6 Cir., 1959, 264 F.2d 88; Fairway Foods, Inc. v. Fairway Markets, Inc., 9 Cir., 1955, 227 F.2d 193; Youthform Company v. R. H. Macy & Co., N.D.Ga., 1957, 153 F.Supp. 87; and Note, Developments in the Law of Trade-Mark and Unfair Competition, (1955), 68 Har.L.Rev. 814. Contra: Sterling Brewing, Inc. v. Cold Spring Brewing Corp., D.Mass., 1951, 100 F.Supp. 412; Elcon Manufacturing Co. v. Elcon Manufacturing Co., E.D.N.Y., 1955, 132 F.Supp. 769; Robert, Commentary on the Lanham Trade-Mark Act, 15 U.S.C.A. Sub-title VII, p. 280.
 
 
 28
 Here no proof was offered as to probable or needed expansion and the court provided that its order was without prejudice to the rights of the parties in areas not encompassed in the order. This was a proper disposition of the matter in the light of our view that the rule stated by the Second Circuit in the Dawn Donut case, supra, based as it is on the necessity of showing likelihood of confusion as to source of origin, 15 U.S.C.A. 1114(1), is correct. Under it and in our opinion, the protection of the Act runs only to those areas where the trade-mark has gone on the goods through sale or advertisement, together with such additional areas as are warranted under the evidence for expansion.
 
 
 29
 The constructive notice provision of the Act does deprive a concurrent user of the good faith or ignorance of prior appropriation factor as a defense in sustaining the right to concurrent use. However, there may be other reasons under the Act for sustaining concurrent use. See the defenses under 15 U.S.C.A. 1115. And that the Act eliminates this defense by the constructive notice provision in no wise means that the trade-mark law now is, absent some provision to the contrary to which our attention has not been called, that the registration carries with it the exclusive right to use the mark in interstate commerce notwithstanding lack of use. Indeed, the requirement of confusion as to source as a condition precedent to recovery, 1114(1), negatives such a proposition. The Lanham Act makes registration notice but it did not supplant the prior law as exemplified by Hanover Star Milling Company, and United Drug Company, supra, and take plaintiff's mark beyond where it had been used.
 
 
 30
 The ancient observation that each trade-mark case must be decided upon its own facts still obtains, and so it is that this case having been properly decided upon its own facts, the judgment as appealed from by both plaintiff and defendants is
 
 
 31
 Affirmed.
 
 
 
 [1]
 'The district and territorial courts of the United States shall have original jurisdiction, the circuit courts of appeal of the United States and the United States Court of Appeals for the District of Columbia shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.'
 
 
 [2]
 '(1) Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; * * * shall be liable to a civil action by the registrant for any or all of the remedies hereinafter provided in this chapter, * * *.'
 
 
 [3]
 'The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent Offices. * * *'
 
 
 [4]
 See Lunsford, Trade-Mark Infringement and Confusion of Source: Need for Supreme Court Action (1949), 35 Va.L.Rev. 214 for a representative compilation of cases setting out this test, and Note, Trademarks, Unfair Competition, and the courts: Some Unsettled Aspects of the Lanham Act, (1953), 66 Har.L.Rev. 1094
 
 
 [5]
 There the trade-mark was registered under the Lanham Act but the principle is equally applicable to the registration here under the Act of 1905. See note following 15 U.S.C.A. 1051
 
 
 [6]
 See Lunsford, Are Our Courts Protecting 'Secondary Meaning' Trade-Marks?, 39 The Trade-Mark Reporter 767 (1949), for a full definition of secondary meaning as that term is used in trade-mark law, together with supporting authorities
 
 
 [7]
 Section 1057(b)
 'A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.'
 Section 1072
 'Registration of a mark on the principal register provided by this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, shall be constructive notice of the registrant's claim of ownership thereof.'