**CONTINENTAL MOTORS CORPORATION and Continental Aviation and Engineering Corporation, Appellants,**

v.

**CONTINENTAL AVIATION CORP.,**
Appellee.

No. 22838.

United States Court of Appeals
Fifth Circuit.

April 4, 1967.

Milton M. Ferrell, J. M. Flowers, Miami, Fla., for appellants.

Kenneth L. Ryskamp, Bolles, Goodwin & Ryskamp, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and BROWN and GODBOLD, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is an action for trademark infringement in which Continental Motors [1] appeals the District Court's refusal to enjoin use by Continental Aviation [2] of the name "Continental" alone or together with the word "Aviation" in connection with the sale or advertising of the Florida concern's goods and services. The original complaint also included a claim for damages under principles of unfair competition, but Continental Motors abandoned this claim in the District Court and now seeks only an injunction for trademark infringement.[3] We reverse the District Court's denial of injunctive relief and remand.

The facts, mostly stipulated, can be briefly summarized. Continental Motors is the largest independent manufacturer of internal combustion engines in the world, having been continuously engaged in the industry since 1902 with approximately 25% of its output being sold for use in aircraft. Since 1946, Continental Aviation and Engineering Corp., a subsidiary of Continental Motors, has also been engaged in the business of manufacturing, selling, and servicing aircraft engines and related parts and equipment. Their products are sold and distributed in every state of the United States and in every continent of the world. Continental Motors and its subsidiary have registered with the United States Patent Office no less than 20 trademarks between the years 1917 and 1958, most of which are of the word "Continental," but also including the words "Continental Aviation." Testimony presented in the District Court established substantial annual expenditures for advertising in publications widely circulated in connection

1. Continental Motors Corporation, incorporated in Virginia, joined by its subsidiary Continental Aviation and Engineering Corporation, also of Virginia.

2. Continental Aviation Corporation, a Florida Corporation.

3. Apparently the District Court was concerned by the dismissal of the complaint seeking damages on grounds of unfair competition, and the effect this dismissal would have on the right to relief for trademark infringement. It is now universally agreed that the law of trademarks is only part of the larger field of unfair competition. Safeway Stores, Inc. v. Safeway Properties, Inc., 2 Cir., 1962, 307 F.2d 495, 497 n. 1 and authorities there cited. Thus the waiver of the damage claim would not dilute the right to an injunction for trademark infringement, assuming that the necessary elements of infringement have been established.

with the words "Continental," and "Continental Aviation." Continental Motors asserts that as a result the name "Continental" when used in connection with the manufacture, sale, service or advertisement of aircraft engines is known and understood both in the United States and abroad as denoting engines manufactured, sold or serviced by the plaintiff, Continental Motors.

Continental Aviation Corp., a Florida Corporation, is located and does business at the Opa Locka Airport in Dade County, Florida. Continental Aviation manufactures nothing, but rather is engaged in the business of servicing, overhauling, and repairing aircraft engines, accessories, instruments, and electronic devices, and in furnishing the necessary parts and materials for such work.[4] Its services are rendered to aircraft landing at the Opa Locka Airport, both private and military, many of which are from states outside of Florida. It has advertised its services in magazines, trade-journals, and other publications circulated within and outside the State of Florida under its own name, and has referred to itself as "Continental" and also by the words "Continental Aviation." Continental Motors alleged that such conduct on the part of the Florida Corporation, the use in advertising of the former's registered trademark, is "likely to cause confusion" within the meaning of the statute, 15 U.S.C.A. § 1114(1) (a), therefore entitling Continental Motors to enjoin the use of such trademarks by Continental Aviation.

At the conclusion of the evidence presented by Continental Motors, the Florida Corporation moved that the District Court dismiss the cause for failure to state a claim upon which relief could be granted. F.R.Civ.P. 12(b). The Court granted the motion and entered judgment for Continental Aviation. Whether its action be considered as a judgment on the pleadings,[5] a disposition of the cause by summary judgment under F.R.Civ.P. 12(b),[6] or as one after a trial, we conclude that the District Court erred. On the procedural device employed we need not speculate, for in any event, "[f]indings induced by or resulting from a misapprehension of controlling substantive principles lose the insulation of F.R.Civ.P. 52(a) and a judgment based thereon cannot stand." [7] And analysis of this record demonstrates that the Judge pursued an incorrect theory.

In an action for trademark infringement, this Court has often repeated that the controlling issue is whether the alleged infringer's use of a particular mark "is likely to cause confusion, or to cause mistake, or to deceive, * * *." Lanham Act, 15 U.S.C.A. § 1114(1)

---

4. Continental Motors supplies aircraft engines to many well known noncommercial aircraft builders, e. g., Beech, Aero-Commander, etc. The Florida Company is a dealer for the sale and servicing of some of these brands.

5. A cause of action may be dismissed on the pleadings only where it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84. This test, although frequently reiterated by the Court, is too frequently forgotten. Barber v. Motor Vessel "Blue Cat," 5 Cir., 1967, 372 F.2d 626, and n. 1 [Jan. 31, 1967], * * * AMC * * *

6. "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." F.R.Civ.P. 12(b). See Kohen v. H. S. Crocker Co., 5 Cir., 1958, 260 F.2d 790.

7. Fulton Nat. Bank v. Tate, 5 Cir., 1966, 363 F.2d 562, and cases cited p. 567, n. 6; Davis v. Parkhill-Goodloe Co., 5 Cir., 1962, 302 F.2d 489; McGowan v. United States, 5 Cir., 1961, 296 F.2d 252; Mitchell v. Mitchell Truck Line, Inc., 5 Cir., 1961, 286 F.2d 721; United States v. Williamson, 5 Cir., 1958, 255 F.2d 512; Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186.

**860**

(a);[8] Abramson v. Coro, Inc., 5 Cir., 1957, 240 F.2d 854, 856; American Foods, Inc. v. Golden Flake, Inc., 5 Cir., 1963, 312 F.2d 619, 623; Pure Foods, Inc. v. Minute Maid Corp., 5 Cir., 1954, 214 F.2d 792, 795.[9] And yet the District Court failed to mention the question of likely confusion.[10] Nor was this question disposed of by the pretrial stipulation of the parties. It is not surprising that the stipulation, a commendable attempt to remove undisputed factual issues and to specify the pertinent issues to be resolved by the court, contained no admission by Continental Aviation of the allegations relating to the question of confusion. This crucial issue was very much in the case and had to be proved.

Here the case would ordinarily end on the simple ground that the trademark owner failed in its proof. But this would not reckon with the basis for the Judge's ruling in favor of non-infringement. And examination of the Court's fact findings and conclusions of law especially when read in the light of the continuing colloquy between Court and counsel, indicates that the District Court was laboring under the serious misapprehension that two factors compelled the denial of relief: (1) the absence of competition between the parties, one a manufacturer of internal combustion engines, the other engaged primarily in the servicing of transient aircraft, and (2) the fact that the claimed trademark incorporated a geographical adjective, "Continental", which we said years ago is inherently incapable of being appropriated either as a trade mark or as a trade name.[11] Continental Ins. Co. v. Continental Fire

8. The statute was amended in 1962 to delete the previously existing requirement that the confusion or deception must relate to the "source of origin of such goods or services." Pub.L. 87–772, § 17, 76 Stat. 773 (1962). Doubtless this could only serve to broaden, not restrict protection.

9. It is not necessary for the party asserting the infringement to produce evidence of actual confusion or deception, Abramson v. Coro, Inc., supra, 240 F.2d at 857, since the mere likelihood of confusion suffices. Thus, counsel's cross-examination of Continental Motor's Treasurer inquiring whether he knew of any instances where mail addressed to the Florida corporation had been misdirected to the Virginia corporation, or vice versa, was material only insofar as it had any bearing on likelihood of confusion. A negative answer would not have automatically precluded infringement.

10. As so often, few Judges fall into error, but many are led or pushed. So it may have been here from the wording used by the parties in stipulating the questions to be resolved by the Court:
   "The following issues of law, and no others, remain to be litigated upon the trial:
   "(a) Has the word 'continental', through long use by the plaintiffs, either alone or in conjunction with the word 'aviation', acquired a secondary meaning in the mind of the public, as de-

noting an article of commerce, manufactured or sold by plaintiffs, or one of them, or as denoting a service by the plaintiffs, or one of them?
   "NOTE: The above question is one of fact and law.
   "(b) Assuming said word 'Continental', used alone or in conjunction with the word 'aviation', has acquired such a secondary meaning, is said word, as so used, such that plaintiffs have the exclusive right to such use of the same, entitling plaintiffs to enjoin and restrain the defendant from the use of said word in its business?"
   Question (b) necessarily, and question (a) probably, involves a finding of whether confusion is likely to result, but this fact is nowhere made explicit.

11. "Findings of Fact
   "* * *
   "7. There is no competition between the plaintiffs and defendant, as plaintiffs are engaged in manufacturing and selling aircraft engines and defendant is not a manufacturer but confines its business to selling and servicing aircraft.
   "* * *
       "Conclusions of Law
   "* * *
   "2. The word 'Continental' is a geographical adjective, and cannot be appropriated as a trade-mark or trade name. Continental Insurance Company v. Continental Fire Association, 101 Fed. 255, (C.A.5, 1900)."

Ass'n, 5 Cir., 1900, 101 F. 255.[12] Neither of these factors precludes a finding of infringement.

■ Often and recently we have made plain that direct competition between the products is not a prerequisite to protective relief. Chemical Corp. of America v. Anheuser-Busch, Inc., 5 Cir., 1962, 306 F.2d 433; Abramson v. Coro, Inc., 5 Cir., 1957, 240 F.2d 854; American Foods, Inc. v. Golden Flake, Inc., 5 Cir., 1963, 312 F.2d 619; Pure Foods, Inc. v. Minute Maid Corp., 5 Cir., 1954, 214 F.2d 792, cert. denied 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 697; Fleischmann Distilling Corp. v. Maier Brewing Co., 9 Cir., 1963, 314 F.2d 149; Safeway Stores, Inc. v. Safeway Properties, Inc., 2 Cir., 1962, 307 F.2d 495. The remedies of the owner of a registered trademark are not limited to the goods specified in the certificate, but extend to any goods on which the use of an infringing mark is "*likely* to cause confusion * * *." (Emphasis added.) American Foods, Inc. v. Golden Flake, Inc., supra, 312 F.2d at 623. Confusion, or the likelihood of confusion, not competition, is the real test of trademark infringement. Whether or not direct competition exists is but one of the elements to be considered in determining whether there is or will be a likelihood of confusion.

■ With respect to the geographical adjective "Continental," the Florida company presses hard the distinction between a "strong" and a "weak mark". It then characterizes the trademarks of Continental Motors as weak and therefore not entitled to the protection that would be accorded a trademark which is original, arbitrary or fanciful. Majestic Mfg. Co. v. Majestic Elec. Appliance Co., 6 Cir., 1949, 172 F.2d 862; Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 1950, 183 F.2d 969, 973.[13] Here again, whether a mark is regarded as "strong" or "weak", "original, arbitrary, fanciful" or "generic, descriptive, geographic" is but one of the elements to be considered in determining whether confusion is likely to result. American Foods, Inc. v. Golden Flake, Inc., supra, 312 F.2d at 624.

■ Regardless of whether a word or words adopted and used as a trademark or trade name could be characterized as geographical in nature, where such words have acquired a "secondary meaning," the courts will afford equitable protection to the party whose use of the word has created the secondary meaning. Safeway Stores, Inc. v. Safeway Properties, Inc., 2 Cir., 1962, 307 F.2d 495, 499. It deserves protection when, because of association with a particular product or firm over a period of time, the word has in the mind of the public come to stand as a name or identification for that product or firm. Safeway Stores, Inc. v. Safeway Properties, Inc., supra; Restatement, Torts § 716(b), com. b (1934). Protection is warranted on what it has come to signify regardless of any original weakness, actual or supposed. Day-Brite Lighting, Inc. v. Sta-Brite Flourescent Mfg. Co., 5 Cir., 1962, 308 F.2d 377, 382; Keller Prod. v. Rubber Linings Corp., 7 Cir., 1954, 213 F.2d 382, 386.

■ The issue of "secondary meaning", although stipulated by the parties as one of the controlling questions (note 10, supra), was completely overlooked by the District Court. To the erroneous concept of "no competition", the Judge also gave too much uncritical and literal significance to our early decision in Continental Ins. Co. v. Conti-

12. In Continental Ins. Co., this Court stated that

"We think that the word 'Continental', a geographical adjective, meaning pertaining to or relating to a continent, is a word in common use, more or less descriptive of extent, region, and character, and, like the words 'Columbian', 'International', 'East Indian', and some other geographical adjectives, it cannot be exclusively appropriated as a trade-mark or trade-name." 101 F. at 257.

13. To some the continued vitality of this distinction is, and probably should be, open to question. See Fleischmann Distilling Corp. v. Maier Brewing Co., 9 Cir., 1963, 314 F.2d 149, 151.

nental Fire Ass'n, supra, which has, to be true, some sweeping language (note 12, supra) denying protection to a geographic term. That it is an "old" case does not, of course, deprive it of force. But as with waters over the dam, there has been much trade in marks since it was announced. One thing, of course, is this dynamic developing field of law. More important, the continuing vitality of this pronouncement has been substantially, if not entirely, sapped by events of the business world. No longer may we say with the finality of our earlier declaration that a geographic name cannot acquire the status of a protected mark. Considering that the test is the very practical one of public association with the name, we know as men, if not Judges, that "Continental" is the distinctive dominant part of many corporate names.[14]

Time, tide, and the relentless movement of the copywriter's pen makes what we once said no longer controlling, not so much from change in the law, but from change in economic fact. Not the least of these is the restless, undulating habits of our air-minded, air-traveling public, many of whom for sport, or pleasure, or business, or an areonautical combination of them, hop across the nation relying, as they must, on dependable service at airports small and large. And it is here that modern, intense advertising creates the "image" upon which the public depends or may depend.[15]

■ The case must therefore be reversed and remanded to the District Court. The parties are to be free to offer additional evidence both on the aspect to "secondary meaning" of the mark as well as to the element of "likelihood of confusion."

Reversed and remanded.

14. Standard and Poors, Corporation Records General Index, p. 14 (Jan. 1967) lists 34 such enterprises. Besides Continental Motors and Continental Aviation and Engineering, the listing includes such stalwarts as Continental Air Lines, Continental Can Co., Continental Casualty Co., Continental Insurance Co., and Continental Oil Co. [Conoco].

15. Indeed, the New York Court of Appeals says it is no longer a world of contract, but rather "a world of advertising." Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399, N.Y.Ct.App.