**TOWLE/SIGMA GIFTWARE CORPORA-TION, a corporation, Plaintiff,**

v.

**J. EDWARD CONNELLY ASSOCIATES INC., a corporation, Defendant.**

**Civ. A. No. 81–442.**

United States District Court,
W. D. Pennsylvania.

Oct. 4, 1982.

Thomas Hollander, Pittsburgh, Pa., for plaintiff.

Foster S. Goldman, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

WEBER, District Judge.

We have before us in this trademark infringement case defendant's motion for summary judgment. The following facts are not in dispute.

Sigma Marketing Systems, Inc. (SMS), was engaged in the sale of giftware items. SMS had two divisions. One division was engaged in the sale of high quality giftware items to retailers. We will refer to this as the wholesale division. The other division was engaged in providing lower priced, lower quality giftware for use in mass-marketing promotional programs through supermarkets, banks, and other institutions. We will refer to this as the premium division. SMS employed the mark "Sigma" in both divisions and engendered goodwill in identification with this mark.

On June 20, 1979 an agreement was signed by which plaintiff Towle Corporation purchased the assets of the SMS wholesale division, and expressly acquired all of SMS's right to use the name Sigma. This contract expressly excluded from the sale the assets of SMS's premium division. Plaintiff corporation then amended its name to include the mark Sigma, and employed the mark in its operation, marketing and advertising in the wholesale giftware business. Plaintiff later registered Sigma as a trademark at Registration No. 1,185,-492.

SMS desired to continue its use of Sigma in connection with its other ventures, including the premium division. To this end, plaintiff's corporation, contemporary with its purchase of the wholesale division, granted SMS a limited, non-transferable license to use the mark Sigma in connection with its other business. This license was limited to a maximum of 3 years duration, from June 20, 1979.

In 1980, defendant Connelly Associates, Inc. approached SMS to purchase the premium giftware division. Defendant sought to purchase the name Sigma in conjunction with the acquisition of the premium division's assets, but was informed by SMS that SMS had no rights in the mark to convey. On August 29, 1980 defendant purchased the inventory and assets of SMS's premium division, but the contract of sale made no assignment of rights in the mark Sigma. However, SMS did agree to refrain from using the mark, and to remove it from its corporate name. Upon assuming operation of the premium division, defendant began using the name Sigma in connection with this enterprise. Plaintiff has now sued Connelly Associates to enjoin its use of the mark Sigma, alleging that plaintiff has sole right to use of the mark and that defendant's use is infringing.

Defendant argues that the contract of sale between SMS and plaintiff expressly excepts from the sale of the trademark the use of the name Sigma in the premium division. The contract conveys to plaintiff "all of seller's right to the name Sigma." (Defendant's Ex. A, Section 1.1(e)). However, the contract also makes provision to exclude from the sale all "assets . . . of seller's mass-marketing division." (i.e. premium division). (Defendant's Ex. A, Section 1.2(a)). Defendant argues that the effect of these provisions is to convey to plaintiff a right in the trademark limited to use in connection with the wholesale business, and retain a trademark right in the

premium division, which defendant acquired by later sale. As a result defendant argues that it cannot be infringing since it owns an independent interest in the mark.

By its terms, the sale provision conveys to plaintiff "all of seller's rights" in the mark. The language could not be broader or more plain, and yet a subsequent provision of the contract excludes from sale all "assets" of the premium division. The broad language of the sale provision and the undefined term "assets" raises a question as to whether the contract was intended to preserve some right in the mark in the premium division. If an ambiguity exists in the contract, then parol evidence would have to be considered to determine the intention of the parties. Such a situation exists here and precludes summary judgment for the defendant. The issue of fact then is whether the exclusion provision of the contract was intended to include trademark rights.[1]

Defendant also contends that SMS could not as a matter of law convey trademark rights of the premium division in the sale of the wholesale division because such a transfer would be invalid as in gross. Therefore, it is argued, defendant acquired independent rights to the mark in the premium division.

■ One cannot acquire a trademark in gross, it being transferable only in connection with the sale of a business. *United Drug Co. v. Rectanus Co.,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918); *Family Circle Inc. v. Family Circle Associates Inc.,* 332 F.2d 534 (3d Cir. 1964). While plaintiff could not purchase the mark of the premium division alone it could and did validly acquire a mark in connection with the wholesale division. It is the scope of the mark acquired that is material in this suit.

Whether it is expressly limited by the terms of the contract of sale of the premium division as discussed above is an issue of fact. If it is determined that the contract does not so limit the trademark, it must be decided whether the use of the mark in the premium business is within the protection afforded by plaintiff's trademark.

Defendant argues that the parties are involved in separate markets with different customers, and that there is no likelihood of confusion in its use of the mark in its business. These are material issues of fact which are disputed. (See *Biren* Deposition). There is evidence that the parties may be, at least indirectly, competitors in the premium business. (*Mullins* Deposition, pp. 11–18).

■ Competition is not necessary to sustain a trademark infringement claim. E.g. *Continental Motors Corp. v. Continental Aviation Corp.,* 375 F.2d 857 (5th Cir. 1967). Rather, a trademark's protection extends beyond the product of the mark owner to such products or enterprises as would likely be perceived by the consumer as originating with the owner of the mark. *I.E. Waterman Co. v. Gordon,* 72 F.2d 272 (2d Cir. 1934); *Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531 (2d Cir. 1964); see also, *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225 (3d Cir. 1978). Whether the premium sales market is so closely related to the wholesale giftware business as to warrant the protection of the trademark is a disputed issue of fact. This question is closely tied to the ultimate issue of the likelihood of confusion among the public, a factual issue which the parties dispute.

---

1. Undisputed facts of record indicate that the parties to the contract did not intend to carve out a right in the mark for the premium division. Because SMS wished to continue the use of the name Sigma in its premium division, plaintiff agreed to grant SMS a limited nontransferable license to the name Sigma. If SMS had intended to reserve any right to the mark in the sale of the wholesale division the license arrangement would have been unnecessary. Additionally, when defendant began negotiating for the sale of the premium division, SMS informed defendant that it had no right in the mark to convey. These facts are evidence of SMS's intent to convey to plaintiff all rights to the mark Sigma, without limitation, in connection with the sale of the wholesale division. Plaintiff's brief indicates a belief that it should be entitled to partial summary judgment in its favor. Plaintiff has not moved for summary judgment in any respect and we cannot, on the record as presented, consider its claim here.

It appearing that there are material issues of fact in dispute, defendant's motion for summary judgment is denied.