McDONALD'S CORPORATION, a corporation, Plaintiff,

v.

Richard H. MOORE and Paul Leverett, doing business as Dixie Hamburger Company, a partnership, and Colonel Dixie Systems, Inc., a corporation, Individually and jointly, Defendants.

Civ. A. No. 3074.

United States District Court
S. D. Alabama, S. D.

July 15, 1965.

Lyons, Pipes & Cook, Mobile, Ala., Hume, Groen, Clement & Hume, Chicago, Ill., for plaintiff.

M. A. Marsal, Mobile, Ala., for defendants.

DANIEL HOLCOMBE THOMAS, District Judge.

This action filed by the plaintiff, McDonald's Corporation, charges in five counts that the defendants have willfully engaged in a series of acts of trademark infringement and unfair competition, including (1) trademark use of a distinctive golden-arch sign and building designs which are confusingly similar to golden-arch sign and building trademarks which plaintiff has promoted throughout the United States and which

have been registered in the United States Patent Office; (2) imitation of the format of plaintiff's business including menus, prices, advertising, employee uniforms, sidewalk colors, ash can colors, and equipment layout; (3) improperly obtaining and copying a valuable operational manual from plaintiff's licensee; (4) interference with plaintiff's restaurant operations through defendants' efforts to hire away and to subvert the loyalty of plaintiff's employees; and (5) breach of a contract made during the pendency of the litigation whereby defendants promised not to begin construction of any new units pending trial. Plaintiff seeks an injunction to prohibit defendants from engaging in unfair trade practices. Plaintiff also seeks damages for the alleged unfair trade practices.

## FINDINGS OF FACT

1. The plaintiff, McDonald's Corporation, hereinafter referred to as McDonald's, is a national hamburger drive-in chain with over six hundred units. The defendants, Richard H. Moore and Paul Leverett, are partners doing business as Dixie Hamburger Company. They also own and operate a small hamburger drive-in chain, Colonel Dixie Systems, Inc., hereinafter referred to as Colonel Dixie.

2. The genesis of this action was a letter written to the defendants on March 20, 1963, by Mr. Norman D. Axelrad, head of McDonald's legal department, requesting that the defendants cease and desist from using a yellow "M" arch in their buildings.

3. The defendants, intending to build a drive-in restaurant, had some preliminary sketches drawn by a Mr. Rush from Auburn, Alabama. When they finally acquired the property, the lessor, Mr. Arthur Olensky, informed them that he wanted them to use his architect, Mr. Fred Woods. The defendants contacted Mr. Woods and he designed the building now used by all Colonel Dixie outlets. Mr. Woods testified that the building was an original idea with him and that he did not copy any other building. Mr. Woods had earlier served as a resident architect for McDonald's. The defendants did not see the plans until they were completed. The building is basically square with twenty-one loops on the outside, attached to the building. The McDonald's building has only two arches. The original color of the building was to have been blue, but Mr. Woods and the defendants decided that a yellow would show up better after checking the surroundings with a color chart.

4. Mr. Woods and Mr. Charles Waller designed the sign used by the defendants. The sign was designed so as to conform with the building: both used loops. Nothing was ever said about copying any other sign. Architects call the color used by Colonel Dixie, "hazard yellow." Advertisers call the same color, "lemon yellow." The color in Colonel Dixie's building and sign is commonly used in outdoor advertising and on street signs and curbs because it shows up so well. At least five witnesses testified that the buildings and signs of McDonald's and Colonel Dixie are not confusing. But as one witness succinctly stated it, "All hamburger buildings look alike to me."

5. The sign at McDonald's is a parabolic arch, according to the testimony of Mr. Woods, while the sign of Colonel Dixie is not parabolic. Colonel Dixie's sign has a rotating panel, which the McDonald's sign does not have. There are three panels in the Colonel Dixie sign, while McDonald's sign has only one. Mr. James Vernon testified that color is the only similarity in the two signs. He stated that there was no geometric similarity in the signs.

6. Mr. William Rognsvoog arranged the layout for Colonel Dixie's fixtures inside their buildings. He testified that the layout was his arrangement and that he did not copy McDonald's.

7. Several of the witnesses testified as to the similarities of various aspects of the operations of the parties. Both parties use green cement sidewalks, red

and white trash cans, similar menu pads, and various other similar minor details. Of course, many differences in the operations were also pointed out.

8. In June 1963, Mr. David Hanke, an employee of Colonel Dixie, asked Mr. Welford Stuckey, an employee of McDonald's, to obtain a copy of McDonald's operations manual for him. Mr. Stuckey complied with this request and the manual was eventually given to the defendants. While the manual was in the defendants' possession, they had it copied. Mr. Leverett stated that they only had the manual copied to see if their operation was similar to McDonald's, because they had gotten notice that McDonald's was going to sue them. Mr. Moore had the manual copied and he personally made the decision as to which portions of the manual were copied. At least two portions of the manual, French fry and milk shake, were not copied. The procedures of Colonel Dixie and McDonald's are different as regards French fries and milk shakes. After the manual was copied, Mr. Stuckey returned the original to McDonald's. The defendants kept the copy in their possession until shortly before this trial.

9. At least five men who had previously worked for McDonald's were hired by Colonel Dixie after they had terminated their employment with McDonald's. This group included Mr. David Hanke, Mr. Welford Stuckey, Mr. Gary Overstreet, Mr. James Owens, and Mr. David Hudson.

10. The testimony established that on August 6, 1964, the parties, through their attorneys, entered into an undated contract which reads as follows:

"McDonalds, Corp.

Civil Action
#3074

v.

Moore & Leverett

"It is agreed between the Parties hereto as follows:

(1) Hearing on temporary injunction be continued.

(2) Case be set for trial on merits and motion for temporary injunction, jointly, within 30 days or as soon thereafter as Court will hear matter. Attorneys to use best efforts to obtain prompt hearing.

(3) Defendants will not, directly or indirectly, begin construction or operation of additional outlets, except 1 outlet in Panama City, Fla., until case has been heard on merits.

(4) This agreement is to be retained by Sam W. Pipes III and not copied or released so long as it is not violated by defendants.

M. A. MARSAL
Attorney for defendants
McDONALD'S CORP.
by SAM W. PIPES III
Attorney for Plaintiff"

In violation of this contract, the defendants started construction on an outlet at Chickasaw, Alabama. The defendants signed a lease and a third party is constructing the building.

CONCLUSIONS OF LAW

1. The Court has jurisdiction in this matter under Title 28 U.S.C., Sections 1332 and 1338.

2. In a trademark infringement case, the burden on the plaintiff is to prove only that there is a "likelihood of confusion." The correct rule is stated in American Foods, Inc., et al. v. Golden Flake, Inc., 5 Cir., 312 F.2d 619:

"* * * it is the accepted rule that infringement may be established by showing only that confusion is likely, and there need be no showing of actual confusion or deception if the mark is of such character or is used in such a way as to likely confuse a prospective purchaser. * * *"

3. The Court finds that there is not a "likelihood of confusion" to a prospective purchaser between the buildings and signs of McDonald's and Colonel Dixie.

■ 4. Unfair competition is actionable even where there is no trademark infringement. Chemical Corporation of America v. Anheuser-Busch, Inc., 5 Cir., 306 F.2d 433.

■ 5. The Court finds that the defendants' improper acquisition and copying of the operational manual was such misconduct that it amounts to unfair competition. The case of Seismograph Service Corporation v. Offshore Raydist, Inc., D. C., 135 F.Supp. 342, states the rule to be applied as follows:

"* * * The improper acquisition itself creates the liability in damages. * * * 'One who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information.' Restatement of the Law of Torts, § 759.

"Even where it cannot be said that the parties stand in confidential relations, improper acquisition of another's business information or trade secrets subjects the perpetrator to liability in damages. * * *"

6. The Court also takes notice that many of the procedures of the two operations are similar, but this is true to a certain extent in all hamburger drive-ins.

■ 7. The Court is of the opinion that an employer can seek employees from any source, so long as in doing so he does not violate any law. The Court finds that the defendants' actions in hiring ex-employees of McDonald's did not constitute unfair competition. The hiring of an employee from a competitor did not constitute unfair competition in Official Aviation Guide, Inc. v. American Aviation Associates, 7 Cir., 150 F.2d 173.

■ 8. The plaintiff is not entitled to any injunctive relief to enjoin the operation of Colonel Dixie under the infringement of a trademark or by reason of unfair competition.

9. The Court finds that the defendants definitely breached the agreement not to begin construction or operation of additional outlets until the case was heard on the merits, by entering into a lease to operate and starting construction of an outlet in Chickasaw, Alabama.

10. The Court finds that the plaintiff, McDonald's, is entitled to recover $5,000 punitive damages from the defendants for the unfair competition and breach of the agreement.

Decree to be entered accordingly.