**T. G. I. FRIDAY'S, INC.**

v.

**INTERNATIONAL RESTAURANT GROUP, INC.**

**INTERNATIONAL RESTAURANT GROUP, INC., et al.**

v.

**T. G. I. FRIDAY'S, INC.**

**Civ. A. Nos. 73–387, 74–13.**

United States District Court, M. D. Louisiana.

Dec. 16, 1975.

---

William C. Kaufman, III, Seale, Smith & Phelps, Baton Rouge, La., William D. Harris, Jr., Charles S. Cotropia, Richards, Harris & Medlock, Dallas, Tex., for T.G.I. Friday's, Inc.

John V. Parker, Gerald E. Songy, Sanders, Miller, Downing & Kean, Baton Rouge, La., Charles C. Finch, Batesville, Miss., for Intern. Restaurant Group, Inc., Tiffany English Pub. Inc., F. R. Trainor and Ben E. Pittman.

E. GORDON WEST, District Judge:

These cases involve claims of service mark infringements, unfair trade practices, and breaches of a restaurant licensing agreement. T.G.I. Friday's, Inc. (Friday's), a New York corporation engaged in the restaurant and bar business, brought suit against International Restaurant Group, Inc. (International), alleging service mark infringement, unfair competition, and breach of a licensing agreement entered into between Fri-

day's and a corporation known as Tiffany English Pub, Inc. (Tiffany). It seeks both injunctive relief and monetary damages. International Restaurant Group, Inc. and its two major stockholders, Ben E. Pittman and Frank R. Trainor, brought suit against T.G.I. Friday's, Inc. seeking a declaratory judgment that it, International, was not and is not bound by the licensing agreement referred to in the suit brought by Friday's. The two suits were consolidated for trial. For convenience, in this opinion T.G.I. Friday's, Inc., or Friday's, will be referred to as the plaintiff, and International Restaurant Group, Inc. and its major stockholders will be referred to as the defendants.

The cases involve the operation by International of a restaurant in Baton Rouge, Louisiana, under the name of "Ever Lovin' Saturday's," which Friday's contends is confusingly similar to its restaurants operated under the name of "T.G.I. Friday's." Both restaurants employ what is known in the trade as a "turn of the century" motif.

Plaintiff contends that International's use of the designation "E. L. Saturday's" or "Ever Lovin' Saturday's" for a restaurant business infringes its federal service mark "T.G.I. Friday's" in violation of the Lanham Act, 15 U.S.C. § 1114(1), and its Louisiana service mark "Saturday's" in violation of La.R.S. 51:222. Defendants deny that their adoption and use of the restaurant name "E.L. Saturday's" or "Ever Lovin' Saturday's" would likely cause confusion as to the source of the restaurant services it offers the consuming public, and denies that Friday's federal or state service marks have been infringed.

Plaintiff further contends that International, through its principal owners and operating officers, Ben E. Pittman and Frank R. Trainor, both Mississippi citizens, utilized the name and reputation of the Friday's establishment in Jackson, Mississippi, to organize and promote the Saturday's restaurant in Baton Rouge. Plaintiff alleges that Pittman and Trainor acquired knowledge of the concepts of plaintiff's restaurant operations through their experience as owners and operators of a corporation known as Tiffany English Pub, Inc. (Tiffany), the licensee-operator of the Friday's franchise in Jackson, Mississippi, and that their promotion of Saturday's in Baton Rouge, including the appropriation of Friday's "trade dress," constitutes unfair competition. The defendants deny this contending that plaintiff provided Tiffany no special expertise to operate Friday's in Jackson, Mississippi, which was utilized to operate Saturday's in Baton Rouge, and that plaintiff has no exclusive right to a "turn-of-the-century" theme in its restaurant operations.

Finally, plaintiff contends that the obligations imposed upon Tiffany under the licensing agreement for the Friday's franchise in Jackson were binding upon, and were breached by Pittman and Trainor individually, and by International, in their operation of Saturday's in Baton Rouge. The defendants deny this contention on the grounds that International was not a party to the franchise agreement between Friday's and Tiffany; that it was formed in good faith by Pittman and Trainor for legitimate purposes as a separate business venture from Tiffany; that the assets and liabilities of the two corporations are distinct and have never been commingled; and that the two corporations have never been mere agencies for the transaction of Pittman and Trainor's own private business. Thus, the defendants urge that plaintiff cannot "pierce the corporate veil" to impose personal liability on Pittman and Trainor. The defendants further urge that the licensing agreement between plaintiff and Tiffany was signed by Pittman and Trainor only on behalf of Tiffany, and was not binding upon them individually, nor upon International.

Defendants seek a declaratory judgment to the effect that the restaurant licensing agreement entered into between

Tiffany and Friday's, Inc. in no way interferes with their rights to operate the Saturday's establishment in Baton Rouge. They further claim to be entitled to an injunction permanently enjoining Friday's, Inc. from interfering in any way with the operation of the Saturday's restaurant in Baton Rouge or in any other location. Friday's, Inc. counter-claims for a declaratory judgment that International, Tiffany, Pittman, and Trainor either individually or collectively violated Section 14 of the licensing agreement pertaining to "Other Tradenames and Marks." In that section, Tiffany acknowledged plaintiff's "vital interest" in the marks "Tuesday's," "Wednesday's," "Thursday's," and "Sunday's," and agreed not to use "the names of the days of the week, singly or in combination . . . in connection with the operation of a business" other than the Friday's franchise in Jackson, Mississippi. Friday's, Inc. further counter-claims for injunctive relief to permanently enjoin the defendants from any "further violations" of the licensing agreement, and from operating any business, other than the Friday's in Jackson, that "utilizes the names of the days of the week singly or in combination."

These consolidated cases were tried to the Court without a jury on June 11 and 12, 1975. After careful consideration of the evidence and the excellent briefs of counsel, the Court concludes that defendant International's use of the designations "E. L. Saturday's" or "Ever Lovin' Saturday's" did not infringe plaintiff's federal service mark "T.G.I. Friday's"; that plaintiff's Louisiana service mark "Saturday's" is not entitled to infringement protection due to non-use, and that the overall business conduct of International, Pittman, and Trainor did not, as a matter of law, constitute unfair competition. The Court further concludes that Tiffany did not breach the licensing agreement, but assuming arguendo that it did, plaintiff failed to prove any sustained damage as a result. Finally, the Court concludes that the li-

censing agreement between plaintiff and Tiffany did not bind Pittman and Trainor individually, nor International, and further assuming a breach of the agreement by Tiffany, that corporateness could not be disregarded to impose personal liability on Pittman and Trainor. International, Pittman, and Trainor are thus entitled to declaratory and injunctive relief as requested. In connection herewith, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

"T.G.I. Friday's" was the brainchild of Alan Stillman, a former beauty oils salesman, who in 1965 founded the first Friday's restaurant on the upper East side of Manhattan in New York City as a "restaurant/bar and gathering place" for upwardly mobile single adults. The timeliness of Stillman and his business partner's decision to capitalize on the burgeoning singles entertainment market soon became evident. Their efforts yielded over one-half million dollars gross profit in their first year of business, and led to other restaurant ventures which apparently have been equally successful. These other establishments, all in New York City, have been variously named "Tuesday's," "Wednesday's," "Thursday's," and "Sunday's," all possessing themes distinct from each other and from "T.G.I. Friday's".

The basic theme of the original Friday's in New York and subsequent Friday's establishments located elsewhere in the United States is "turn-of-the-century," that is, an eclectic collection of Tiffany lamps, stained glass, old pictures, outdoor awnings, beadboard walls, tin ceilings, and other period pieces which suggest an atmosphere circa the late 1800's through the late 1920's.

Stillman and his original partner, Lawrence Horton, initially formed Euromart, Inc. which wholly owned Friday's in New York City. They then formed Friday's, Inc. in 1969 to organize and promote other Friday's franchises in locations outside of the New York City

metropolitan area. On October 29, 1970, Euromart, Inc. contractually granted plaintiff the exclusive license to use the name "Friday's" in connection with the operation of restaurants, bars, and grills. This contract further granted plaintiff the right to enter into agreements with third parties conferring the right to use of the name "Friday's." This exclusive licensing authority vested in plaintiff became effective on May 1, 1970.

"T.G.I. Friday's" was registered by Euromart, Inc. as a service mark for restaurant and liquor bar services with the Principal Register of the United States Patent Office on December 14, 1971, based upon use of the mark since March 15, 1965. (Principal Register #925,656) The federal registration is effective for a term of twenty years from the date of registry and has been in effect at all times pertinent to this litigation.

Plaintiff undertook its corporate development by granting licenses to third parties to operate "T.G.I. Friday's" restaurants in Dallas, Memphis, Nashville, and Little Rock. Obviously, plaintiff's federal service mark has been used in interstate commerce. On December 15, 1971, defendant Tiffany, a Mississippi corporation with its principal place of business in that State, entered into the restaurant licensing agreement here at issue with plaintiff, under which Tiffany was granted an exclusive license to operate a "T.G.I. Friday's" restaurant in the Jackson, Mississippi, metropolitan area. Among the provisions of this contract, Tiffany as licensee bound itself in the following manner:

"14. OTHER TRADENAMES AND MARKS

A. Licensee acknowledges (1) that Licensor has a vital interest in the names and marks, 'Tuesday's', 'Wednesday's', 'Thursday's', and 'Sunday's' (the 'other marks') and expects to develop interest in businesses operated under the other marks; (2) that Licensor's present use of the other marks has materially assisted in the creation of the national image and goodwill associated with 'T.G.I. Friday's' and (3) that no rights to the use of the other marks is granted hereby.

B. Licensee covenants and warrants that during the term of this agreement and subsequent to its termination Licensee, its successors or assigns, shall not utilize the names of the days of the week singly or in combination with other words in connection with the operation of a business."

\*　　\*　　\*　　\*　　\*　　\*

The negotiations preceding the execution of the agreement were conducted by defendants Pittman and Trainor, who own all of the Tiffany stock and are the chief operating officers of the corporation. The Court finds that Pittman and Trainor signed the licensing agreement on Tiffany's behalf, and not in their individual capacities.

Prior to Friday's opening in Jackson, plaintiff assisted Tiffany by providing an "opening team", recipes, an "Operations Manual", and sources of items needed to furnish the restaurant. The assistance rendered was general in nature and was provided to insure that the franchise would conform to the specifications of the licensing agreement. No showing was made by plaintiff at trial to indicate that any of the information provided Tiffany was to be kept confidential. The Jackson franchise opened for business on October 19, 1972, and has been operating successfully since then pursuant to plaintiff's manual.

During 1972, T.G.I. Friday's Group, Inc., the Dallas licensee, statutorily merged with plaintiff. Plaintiff then redetermined its development strategy, and proceeded to repurchase the existing Friday's franchises in Dallas and Nashville. Plaintiff began directly controlling the day-to-day operation of these establishments through its Dallas office, and planned to open new stores under its own aegis to insure quality control and development of its desired public image.

Plaintiff has promoted its public image by in-store advertising through the use of special placemats, menus, matches, bar napkins, etc., featuring all the days of the week, including Saturday. However, we believe that the use of "Saturday" in this manner was merely decorative and was not intended for use as a service mark.

Plaintiff has also advertised in publications aimed at the affluent 18–40 year age group, such as airline in-flight magazines, but has never advertised locally in the Baton Rouge area. Friday's restaurants have been featured in articles in national publications including Playboy, Newsweek, Holiday, The New York Times, and the old Saturday Evening Post. The Court finds that plaintiff has acquired regional reputations, but not a national reputation, in those metropolitan areas where its establishments are located.

During December 1972, Pittman and Trainor went to Dallas to discuss the possibility of purchasing an additional franchise for a Friday's operation in Baton Rouge or New Orleans. They were informed by plaintiff's Board of Directors that corporate strategy precluded the negotiation of another franchise. Plaintiff made an offer to repurchase the Jackson franchise from Tiffany, which Pittman and Trainor rejected.

Their desires frustrated, Pittman and Trainor formed International on February 15, 1973, for the purpose of opening "Ever Lovin' Saturday's" in Baton Rouge. Pittman and Trainor, President and Vice-President respectively, own controlling interest in International. Both Tiffany and International initially operated out of the same office space in Jackson which was leased by Tiffany, and contributed to by International. Both corporations utilized the services of the same attorneys and accountants. The financial structures and assets of the two corporations, though, have consistently been segregated.

International conducted business for a short while under Friday's letterhead until "Ever Lovin' Saturday's" stationery was ordered. Certain bills incurred by International as organizational costs of "Ever Lovin' Saturday's" were incorrectly addressed to "T.G.I. Friday's" in Jackson. Obviously some of these suppliers furnishing items to International were unsure whether there was any connection between "T.G.I. Friday's" and the embryonic "Ever Lovin' Saturday's". We believe that the evidence of misdirected billings to Friday's in Jackson does not indicate any likely consumer confusion of Saturday's with Friday's, since Saturday's was then only in its conceptual stages.

Pittman and Trainor also used Friday's letterhead to communicate with Ron Evans, the leasing agent for Corporate Mall, Inc., about securing a building lease to locate Saturday's in Baton Rouge. A financial statement of the Jackson Friday's was also sent to Evans under the Friday's letterhead. Various letters of recommendation were sent to Evans by Jackson, Mississippi, businessmen who highly recommended Pittman and Trainor as reputable, successful men whose "T.G.I. Friday's" restaurant had quickly flourished. These recommendations were purely personal in nature and conveyed the feelings of these men that Pittman and Trainor were good people with whom to do business. Their business credentials and references being in order, Pittman and Trainor then met Evans in his Baton Rouge office to discuss the possibility of establishing Saturday's in Corporate Mall, a Baton Rouge shopping center under construction and owned by Corporate Mall, Inc. Evans clearly understood that Pittman and Trainor were only licensees of plaintiff, and that any restaurant venture at Corporate Mall would be theirs alone and would not have the financial backing or sponsorship of plaintiff. They were very candid in their representations, and never pretended that they could bring a Friday's restaurant to Bat-

on Rouge. They did indicate, though, that the proposed establishment would be "Friday's-like" in style and atmosphere.

The Court finds that Pittman and Trainor were only attempting to impress Corporate Mall, Inc. with their track record as the operators of the successful Friday's franchise in Jackson. This they accomplished by furnishing Evans with their franchise's financial statement which reflected their efforts as restaurateurs. They surely were not trying to capitalize on plaintiff's goodwill and reputation since they admitted that they were only the owners of plaintiff's Jackson licensee, and that any venture at Corporate Mall would not be affiliated with the plaintiff. The Court further finds that Pittman and Trainor did not use either Tiffany or International as mere agencies to conduct their own personal business. Both corporations were formed for the purpose of operating restaurants, and that is how their respective affairs have been consistly conducted.

Prior to the time the construction and lease agreements were entered into between International and Corporate Mall, Inc., but after negotiations had begun, Evans contacted plaintiff's Executive Vice-President in Dallas, Daniel R. Scoggin, to see if plaintiff would be interested in expanding to Baton Rouge. Evans, who was charged with securing tenants for Corporate Mall, really preferred having plaintiff locate there because of its superior Dun & Bradstreet report. Walter Henrion, plaintiff's Vice-President in charge of development, went to Baton Rouge at Evans' invitation to investigate Corporate Mall as a potential site for a Friday's restaurant. Evans told Henrion that he was negotiating with International and that plaintiff would have one week to make a decision. After its request for an extension of time was rejected by Corporate Mall, Inc., plaintiff decided that it did not have enough time for preliminary investigation necessary to enable it to make an informed decision whether to locate in Baton Rouge, so it decided against it.

On April 13, 1973, International and Corporate Mall, Inc. entered into the construction and lease agreements. Pittman and Trainor subsequently formed an "opening team" of ten to twelve persons headed by manager Larry Foles to assist in preparation for Saturday's "grand opening." Several of these persons were former employees of Friday's in Jackson, who had been terminated by Tiffany and put on International's payroll. "Ever Lovin' Saturday's" opened for business on or about December 30, 1973, and has been profitably operating ever since.

The Court finds that there is no likelihood of confusion between the marks "T.G.I. Friday's" and "E. L. Saturday's" or "Ever Lovin' Saturday's." Considering the marks in their separate totalities, it is obvious that no reasonably prudent prospective customer would likely confuse Saturday's with Friday's simply by observing the restaurant designation "Ever Lovin' Saturday's." The marks, or names themselves, are just too dissimilar.

Saturday's is virtually identical to a Friday's restaurant thematically. The same illustrative items mentioned at the beginning of these findings which are employed in a Friday's restaurant to create the desired 'turn-of-the-century" effect are to be found at Saturday's. It is an inescapable fact that Saturday's "trade dress" mirrors that of Friday's.

The service marks "E. L. Saturday's" and "Ever Lovin' Saturday's" were registered by International with the Louisiana Secretary of State's office on January 14, 1973, for restaurant and bar services. The service mark "Saturday's" was registered by plaintiff with the Louisiana Secretary of State's office on June 14, 1973, likewise, for restaurant and bar services. However, while International has operated "E. L. Saturday's" or "Ever Lovin' Saturday's" since December 30, 1973, plaintiff has never

operated any restaurant/bar operation in Louisiana or elsewhere under the mark "Saturday's".

## CONCLUSIONS OF LAW

This Court has jurisdiction over the infringement and unfair competition claims asserted in this matter. 15 U.S. C. § 1121; 28 U.S.C. § 1338; 28 U.S.C. § 1331. Because there is complete diversity between the plaintiff and all defendants, we have jurisdiction over the contract claim as well. 28 U.S.C. § 1332.

### I. The Federal Infringement Claim

■ The thrust of plaintiff's federal infringement claim is that defendant International's use of "E. L. Saturday's" or "Ever Lovin' Saturday's" as a restaurant name will likely cause confusion in the public's mind with its service-marked "T.G.I. Friday's" restaurants, in violation of 15 U.S.C. § 1114(1)(a), which provides, in pertinent part, that:

"(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any . . . colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any . . . services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

\*     \*     \*     \*     \*     \*

shall be liable in a civil action by the registrant . . . ."

Thus, "likelihood of confusion" is the applicable test for determining the existence vel non of infringement both in trademark litigation[1] and in service mark litigation[2]. Though "likelihood of confusion" is treated as a finding of fact in this circuit, Holiday Inns, Inc. v. Holiday Out in America, 481 F.2d 445 (CA 5 1973), and a conclusion of law in the Ninth Circuit, U. S. Jaycees v. San Francisco Chamber of Commerce, 354 F.Supp. 61 (N.D.Calif.1972), aff'd 513 F.2d 1226 (CA 9 1975), we believe it to be a mixed question since the determination carries its own legal effect. Our determination is based upon the factors set forth in the Restatement of Torts, § 729[3], which we believe to be relevant to the facts of this case. McCarthy, J. Thomas, Trademarks and Unfair Competition (1973), § 23:4, p. 41, fn. 17.

■ The mark "T.G.I. Friday's" and the designations "E. L. Saturday's" or "Ever Lovin' Saturday's" are dissimilar visually and phonetically when compared in their entireties. Massey Junior College, Inc. v. Fashion Institute of Technology, 492 F.2d 1399 (CCPA 1974). We do not believe that they would connote the same idea or mental reaction among reasonably prudent consumers since each mark was coined arbitrarily without being descriptive or suggestive of the respective restaurant services offered. Though the question of intent to avoid infringing a federally registered mark is immaterial, Coca-Cola

1. Roto-Rooter Corp. v. O'Neal, 513 F.2d 44 (CA5 1975); Continental Motors Corp. v. Continental Aviation Corp., 375 F.2d 857 (CA5 1967); Abramson v. Coro, Inc., 240 F.2d 854 (CA5 1957).

2. Boston Pro Hockey Ass'n. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004 (CA5, 1975); Liberty Mutual Ins. Co. v. Liberty Ins. Co., 185 F.Supp. 895 (D.C.Ark.1960); Mr. Travel, Inc. v. VIP Travel Service, Inc., 268 F.Supp. 958 (D.C.Ill.1966), aff'd per curiam 385 F.2d 420.

3. "In determining whether the actor's designation is confusingly similar to the other's trade-mark or trade name, the following factors are important:

(a) the degree of similarity between the designation and the trade-mark or trade name in
    (i) appearance;
    (ii) pronunciation of the words used;
    (iii) verbal translation of the pictures or designs involved;
    (iv) suggestion;
(b) the intent of the actor in adopting the designation;
(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;
(d) the degree of care likely to be exercised by purchasers."

*Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183 (D.C.N.Y.1972), there is no doubt but that Pittman and Trainor's intent in adopting the designation "Ever Lovin' Saturday's" was to avoid infringing plaintiff's federally registered service mark, since they had been warned of a possible infringement suit as early as April 13, 1973. We believe that they succeeded. Finally, while the services and marketing methods of these respective parties are essentially identical, we believe that reasonably prudent consumers in the Baton Rouge market would not be likely to confuse "Ever Lovin' Saturdays" with "T.G.I. Friday's" since plaintiff has never directly competed with International in this area and has never advertised locally. *Penn Fishing Tackle Mfg. Co. v. Pence,* 505 F.2d 657 (CA 5 1974); *Safeway Stores v. Stephens,* 281 F.Supp. 517 (W.D.La.1967). The evidence of actual confusion among a few restaurant suppliers who misdirected some billings for Saturday's organization costs to Friday's in Jackson we regard as de minimis and not material to the issue of likely consumer confusion. *Holiday Inns, Inc. v. Holiday Out in America,* supra; *Allstate Ins. Co. v. Allstate Investment Corp.,* 210 F.Supp. 25 (W.D.La.1962).

Based upon our finding that there is no likelihood of confusion between plaintiff's federal service mark "T.G.I. Friday's" and International's designations "E. L. Saturday's" or "Ever Lovin' Saturday's", the Court concludes that plaintiff's mark has not been infringed.

### II. The State Infringement Claim

■■ Plaintiff contends that International's use of "E. L. Saturday's" or Ever Lovin' Saturday's" infringes its registered Louisiana service mark "Saturday's", in violation of La.R.S. 51:222(1), which provides in part that:

Any person who shall:

(1) use, without the consent of the registrant, any reproduction . . .

or colorable imitation of a mark registered under this Sub-part in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion . . . or to deceive as to the source of origin of such goods or services . . .

\* \* \* \* \* \*

shall be liable to a civil action by the owner of such registered mark . . ."

We disagree. Plaintiff's registration of "Saturday's" with the Louisiana Secretary of State on June 14, 1973, as a State service mark has been substantively ineffective since plaintiff has never operated any restaurant or other business by that name in Louisiana or elsewhere. As stated by the court in *Buyers and Traders Service, Inc. v. Car Maintenance Specialists of Baton Rouge, La., Inc.,* 290 So.2d 753 (La.App. 1st Cir. 1974), writ refused 294 So.2d 550:

"It is well settled that the mere registration of a trademark or trade name [or service mark] does not thereby create any substantive rights concerning its use, but confers only procedural advantages and remedies for the protection of the trademark or trade name [or service mark]." At 757.

Priority of appropriation by use determines a party's proprietary interest in a mark. *Metalock Corp. v. Metal-Locking of La., Inc.,* 260 So.2d 814 (La.App. 4th Cir. 1972), writ denied, 262 La. 189, 262 So.2d 788; *Couhig's Pestaway Co., Inc. v. Pestaway, Inc.,* 278 So.2d 519 (La. App. 3rd Cir. 1973).

Thus, plaintiff has never acquired proprietary interest in its State service mark "Saturday's", and that mark is not entitled to infringement protection.

### III. The Unfair Competition Claim

■ Because there is complete diversity between the plaintiff and all defendants in this matter, the Court be-

lieves that Louisiana substantive law should govern the unfair competition claim. *McCarthy, supra.,* § 32:13, p. 456; *Neal v. Thomas Organ Co.,* 325 F. 2d 978 (CA 9 1963); *Volkswagenwerk Aktiengesellschaft v. Church,* 256 F. Supp. 626 (S.D.Calif.1966), aff'd 411 F. 2d 350 (CA 9 1969); *PGA v. Bankers Life & Casualty Co.,* 514 F.2d 665, 671 (CA 5 1975).

██ In Louisiana, to sustain an action for unfair competition,

> "it is a prerequisite to injunctive relief that fraud be established on the part of the defendant and the burden of establishing that fraud is upon the plaintiff. The law has always been reluctant to presume fraud." *Straus Frank Co. v. Brown,* 246 La. 999, 169 So.2d 77, at 80 (La.S.Ct.1964).

Though this jurisprudential requirement has been criticized (see e. g., Martin and Springgate, Protection of a Businessman's Proprietary Information, 32 La. L.Rev. at 526 (1972); Robinson, Tradenames and Trademarks—State and Federal; Some Random Observations, 22 La.Bar Journal 179 (1974)), courts have adhered to it. *United Distributors, Inc. v. United Distributing of Shreveport, Inc.,* 273 So.2d 871 (La.App. 2nd Cir. 1973); *Couhig's Pestaway Co., Inc. v. Pestaway, Inc.,* supra; *LeFebure Corp. v. Lefebure, Inc.,* 284 F.Supp. 617 (E.D.La.1968). However, since at common law "likelihood of consumer confusion and passing off one's goods or services as those of another constitute the gravamen of the [unfair competition] action", *PGA v. Bankers Life & Casualty Co.,* supra., at 671, we believe that this would be tantamount to fraud, with the result being the same whether Louisiana or common law is applied.

██ In this case, any fraud would had to have been perpetrated either upon Corporate Mall, Inc. or the consuming public. Corporate Mall, Inc. was not deceived, since they were fully aware that Pittman and Trainor did not repre-sent plaintiff. The fact that Evans, the leasing agent, gave plaintiff's representatives an opportunity to locate in Corporate Mall after negotiations with International had begun supports the conclusion that International, through Pittman and Trainor, did not misrepresent itself to secure a location to begin business. Pittman and Trainor's submission of the Jackson franchise's financial statement to Evans did not constitute trading upon plaintiff's goodwill and reputation because, as Tiffany's operating officers, they had every right to utilize their company's financial statement in an effort to impress Evans with their management skills. The fact that Tiffany held plaintiff's franchise is really not significant in view of Pittman and Trainor's straightforward representations to Corporate Mall, Inc. as to International's nonaffiliation with the plaintiff in the venture.

██ Plaintiff further alleges in support of its unfair competition claim that International simulated Friday's "trade dress" in promoting Saturday's by using identical antiques, outside awnings, Tiffany lamps, stained glass, etc. to furnish the place. We have so found. But as stated by *McCarthy, supra.,* at § 8:2, p. 232,

> "In cases of alleged confusingly similar trade dress . . ., most courts hold that proof of secondary meaning is a condition precedent to obtaining protection against such acts under the common law of unfair competition. That is, plaintiff must prove that the public has come to associate the total 'image' of plaintiff's package [service] with one source."

While most of the cases revealed by our extensive research dealing with "trade dress" simulation involved similar product labelling, product packaging, building and vehicle designs, we believe the majority view as expressed above would be applied in this instance by Louisiana courts. See, *McCarthy, supra.,* § 7:34–35, and Ch. 8; Annotations in 17 ALR

784, 28 ALR 114. The Court concludes that plaintiff has failed to prove that the consuming public in this area associates its "trade dress" exclusively with its restaurants and with no one else's. The fact that there are hundreds of "turn-of-the-century" restaurants in the United States negates any realistic possibility that reasonably prudent consumers in the Baton Rouge area would be likely to confuse Saturday's with Friday's despite the overall resemblance of their images. In arriving at this conclusion, we again take into account, as we must, the obvious dissimilarity between the marks "Ever Lovin' Saturday's" and "T.G.I. Friday's". *McCarthy,* supra., § 8:1, p. 230, and cases cited under fn. 3. Despite plaintiff's fairly extensive advertising and favorable national press, we are convinced that its restaurants' motif is no more well known in this area than is, for example, Hoolihan's restaurant in New Orleans. Thus, the consuming public has not been deceived or defrauded into confusing the source of Saturday's restaurant services. *Bonanza, Int'l v. Double "B"*, 331 F.Supp. 694 (D.Minn.1971); *Shakey's v. Martin*, 91 Idaho 758, 430 P.2d 504 (Idaho S.Ct.1967).

Plaintiff finally argues in support of this claim that Pittman and Trainor utilized their "collective know-how" gained as the principal operators of plaintiff's Jackson licensee to promote Saturday's in Baton Rouge. It is a fact that Tiffany was provided with Friday's "Operations Manual", recipes, sources of restaurant supplies, and general organizational assistance. However, we do not believe that anything learned by Pittman and Trainor was in the nature of "trade secrets" which would be protected against unauthorized use. No evidence was adduced at trial which indicated that the proprietary information gained by Pittman and Trainor was unique to plaintiff's operations. Nor was evidence adduced which indicated that the "know-how" imparted to Pittman and Trainor through plaintiff's "Operations Manual" was either expressly or impliedly confidential. Cf. *Martin* and *Springate,* supra, 32 La.L.Rev. at 515; contrast *McDonald's Corp. v. Moore,* 243 F.Supp. 255 (S.D.Ala.1965), aff'd per curiam, 363 F.2d 435 (CA 5 1966). As stated by the Court in *Wheelabrator Corp. v. Fogle,* 317 F.Supp. 633, at 639 (W.D.La.1970):

> "To limit a man in the exercise of his knowledge there must be a strong showing that the knowledge was gained in confidence."

Plaintiff has failed to carry its burden of proving the confidentiality of the information provided Tiffany as its licensee. Pittman and Trainor, as the principal operators of plaintiff's licensee, were not precluded from using their knowledge to promote Saturday's. International, Pittman, and Trainor did indeed toe a very tight line in promoting Saturday's, but the Court concludes for the above reasons that they did not cross it to unfairly compete with the plaintiff.

*IV. The Contract Claim*

Plaintiff and Tiffany expressly agreed that the provisions of the licensing agreement would be construed in accordance with New York law, and we are so bound. *Clurman v. Clurman,* 373 N.Y.S.2d 951 (N.Y.Sup.Ct.1975); *B. M. Heede, Inc. v. West India Mach. & Supply Co.,* 272 F.Supp. 236 (D.C.N.Y. 1967).

The contract claim is based upon these parties' dispute over the meaning of sub-Section 14(B) of the licensing agreement, supra. Plaintiff's position is that sub-Sections 14(A) and 14(B) "are reconcilable and that each is free from conflict or ambiguity when considered separately or in conjunction with the other. * * * Had the authors of the contract intended sub-Section 14(B) to be read as limited to the scope of sub-Section 14(A), then its language 'the other marks' would have been used in sub-Section (B) instead of the very clear encompassing language 'the names of the days of the week' ". The defendants'

position is that sub-Section 14(B) "does not prohibit the use of the word Saturday or a combination thereof by any party", or stated differently, that the two sub-Sections must be read together to construe the meaning of the language "the names of the days of the week" contained within sub-Section (B). It is this Court's opinion that this language is ambiguous when read in para materiae with sub-Section (A) of section 14.

It is hornbook law that all provisions must be considered together when construing the intent of a particular term of a contract, and "as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract". *Rentways, Inc. v. O'Neill Milk & Cream Co.*, 308 N.Y. 342, 126 N. E.2d 271, 273 (CANY 1955).

We believe that the most sensible meaning to attribute to the phrase "the names of the days of the week" is to limit it to those days designated as "other marks" in sub-Section (A). While this construction resolves the ambiguity against plaintiff, as the drafter of the contract, *Rentways*, supra, it does not leave sub-Section (B) without force and effect. *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 150 N.Y.S.2d 171, 133 N.E.2d 688 (CANY 1956). Tiffany is still prevented from using those marks in which plaintiff has a "vital interest" and contemplates using in Tiffany's territory. We believe that common sense dictates that utilization of "Saturday" was not proscribed by sub-Section (B)'s terms, since plaintiff expressed no intention to develop "Saturday" as a service mark, and in fact has not done so.

Accepting *arguendo* plaintiff's assertion that Tiffany breached sub-Section (B), the Court concludes that plaintiff has failed to prove that it suffered any damage as a result. Plaintiff never used the word "Saturday" as a service mark to gain substantive rights of protection against infringement. *U. S. v. Steffens*, 100 U.S. 550, 25 L.Ed. 78 (1879). Plaintiff's decorative use of "Saturday" on its placemats and napkins did not constitute such a use. It therefore had no propriety interest in the name "Saturday" and was not harmed by any breach of sub-Section (B).

Because we principally have concluded that Tiffany did not breach the contract, we need not deal with the "alter-ego" theory of liability at length. Since Tiffany was not bound to refrain from using "Saturday", the cases relied upon by plaintiff to support this theory are inapposite. No evidence was produced even tending to show that Pittman or Trainor ever disregarded corporateness to use the corporations as mere agencies to conduct their own private business. *Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc.*, 227 So.2d 265 (La.App. 2nd Cir. 1969); *Altex Ready-Mix C. Corp. v. Employers Com'l U. I. Co.*, 308 So.2d 889 (La.App. 1st Cir. 1975). Thus, the "alter-ego" theory is inapplicable to the facts.

Secondly, the only parties to the franchise agreement were plaintiff and Tiffany. Pitman and Trainer were not parties to it, since they signed only in their representative capacities. *Cefalu v. N. Cefalu Co., Inc.*, 253 So.2d 547 (La.App. 1st Cir. 1971). It hardly needs mentioning that International was not a party since it was not even in existence when the contract was confected.

## V. Conclusion

For these reasons, the defendants are entitled to declaratory and injunctive relief as requested. Counsel for defendants shall submit proposed decrees in accordance with these findings as to each of these two cases.