**SAFEWAY STORES, INCORPORATED**

v.

**Wesley STEPHENS, d/b/a Save-Way Food Center and Save-Way Dairy Bar.**

**Civ. A. No. 12006.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Sept. 8, 1967.

Daniel T. Murchison, Watson, Williams, Brittain & Murchison, Natchitoches, La., for plaintiff.

G. F. Thomas, Jr., Thomas & Friedman, Natchitoches, La., for defendant.

## RULING ON MOTION FOR INJUNCTION

BEN C. DAWKINS, Jr., Chief Judge.

This is a suit for infringement of the service mark and trade-mark "Safeway," owned by petitioner and registered by it in the United States Patent Office, and to stop unfair competition. The relief sought is for permanent injunction against respondent who is engaged in business in Natchitoches, Louisiana.

Jurisdiction rests upon 15 U.S.C. § 1121 (Lanham Act). By agreement of the parties all facts in the case have been stipulated, trial has been waived and the matter is submitted to this Court on the joint stipulation. The single issue of law is whether petitioner is entitled to an injunction under the agreed stipulation. By way of background, we note the following facts.

Safeway Stores, Incorporated is organized under the laws of Maryland and has been authorized continuously to transact business in Louisiana since January, 1943. Petitioner and its predecessors in

interest have continuously used "Safeway" as the dominant part of their corporate name on a national basis since 1925, and petitioner has used "Safeway" both as a trade name and as a trade-mark on a national basis since 1941. The nature of Safeway's business is that of a food or grocery retailer and at the present time Safeway is the second largest retailer of its kind in the United States.

At all times its operations have included the purchase, manufacture, storage, warehousing and retail distribution of food and household products, including groceries, meats, produce and other such products as mops, brooms, plastic dishes, soaps, detergents, cosmetics, beauty aids, disinfectants, proprietary drugs, sundry household medicinal supplies, magazines, automobile accessories and small hardware items.

That petitioner owns valid and existing service mark and trade-mark registrations issued by the United States Patent Office is undisputed. The mark and name of "Safeway" is and has been used in Louisiana since 1947, and has been registered with the Secretary of State since that time. This trade name and service mark have at all times been prominently displayed on all of petitioner's stores and vehicles which number in the thousands. Operations of Safeway Stores, Incorporated extend to the State of Mississippi and all States west of the Mississippi River except Minnesota, Wisconsin and North Dakota. Safeway's stock is traded on several of the national exchanges, including the New York Stock Exchange, and its annual cost of advertising exceeds Twenty Million Dollars ($20,000,000).

Petitioner's retail operations in Louisiana include: four stores in Monroe and West Monroe; a recently opened store in Bastrop; plans for additional stores in the Monroe area and also in Ruston which is some 80 miles from Natchitoches. Although petitioner has no outlet in Natchitoches, Louisiana, the location of respondent's store, petitioner's advertisements, especially through television, reach residents of Natchitoches daily.

Respondent Stephens is the sole proprietor of the concern known as "Save-Way Food Center & Save-Way Dairy Bar" and has been doing business under that name for fourteen years. According to respondent, the name "Save-Way" was selected in a contest specifically designed to choose a name for the business, with $25.00 being awarded for the winning suggestion. At the time of the contest in 1952, respondent knew of the existence of Safeway Stores, Incorporated, and knew of their status as a leading national food company. Respondent also admitted that there had been occasional inquiries by people whether the business owned and operated by him had any connection with Safeway Stores, Incorporated.

Respondent has never applied for a trade or service mark for the name now used in his business, and is not authorized to do business in Louisiana under that name at this time. In some advertisements, respondent has used an "S" similar to that registered to petitioner. In the fourteen years of operation including the year 1965, respondent's business has shown remarkable growth from gross sales of some $123,000 in 1952, to almost $925,000 in 1965. Advertising costs for respondent in 1965 totaled around $6,000, 95% of which was spent in the local newspaper, *The Natchitoches Times*. It has been stipulated that parties to this suit are engaged in the identical business, *i. e.*, the retail grocery business.

Petitioner alleges that it first learned of respondent's use of the name "Save-Way" in March, 1964, when Safeway Stores, Incorporated was served through its agent for service of process in an action originally entitled "Walter M. Clary and Ruby Woodel Clary v. Wesley Stephens d/b/a Safeway Food Store, et al." [1]

1. A certified copy of this suit is included in the record and was designated suit number 33,508 on the docket of the Tenth Judicial District Court for the Parish of Natchitoches, Louisiana.

The suit was against Stephens, *Safeway Stores* and *Safeway's* insurer, the Travelers' Insurance Company. At a later date, counsel for the Clarys, finding that *Safeway* was in no way connected with respondent Stephens or his operation of *Save-Way*, dismissed the action against petitioner and its insurer. On or about September 20, 1965, petitioner demanded that respondent terminate its use of the term "Save-Way" or variations confusingly similar to "Safeway." These facts gave rise to the present litigation.

 In an action for trade-mark infringement, it has often been repeated that the controlling issue is whether the alleged infringer's use of a particular mark "is likely to cause confusion, or to cause mistake, or to deceive, * * * * "[2] Furthermore, direct competition between the products marketed is not a prerequisite to protective relief.[3] The remedies of the owner of a registered trade-mark are not limited to the goods specified in the certificate, but extend to any goods on which the use of an infringing mark is "likely to cause confusion * *."[4] Confusion or the likelihood of confusion, not competition, is the real test of trade-mark infringement. Whether or not direct competition exists is but one of the elements to be considered in determining that there is a likelihood of confusion. Regardless of whether a word or words adopted and used as a trade-mark or trade name could be characterized as geographical in nature, where such words have acquired a "secondary meaning," the courts will afford equitable protection to the party whose use of the word has created the secondary meaning.[5] It deserves protection when, because of association with a particular product or firm over a period of time, the word has come to stand in the mind of the public as a name or identification for that product or firm.[6] Protection is warranted on what it has come to signify regardless of any original weakness, actual or supposed.[7] The fact that the alleged infringer is in good faith and has no actual intention to mislead the public is not a defense. It is enough that such result is "probable."[8] It has been held that trade-mark infringement is recognized to be an aspect of the broader field of unfair competition.[9] The burden is upon the latecomer to avoid confusion, mistake or deception and if doubt exists, it must be resolved against him.[10]

2. See 15 U.S.C. § 1114(1) (a); Continental Motors Corp. v. Continental Aviation Corp., 375 F.2d 857 (5th Cir. 1967); Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609 (7th Cir. 1965); American Foods Inc. v. Golden Flake, Inc., 312 F. 2d 619 (5th Cir. 1963); Abramson v. Coro, Inc., 240 F.2d 854 (5th Cir. 1957); Pure Foods, Inc. v. Minute Maid Corp., 214 F.2d 792 (5th Cir. 1954); Villager, Inc. v. Dial Shoe Co., Inc., 256 F.Supp. 694 (E.D.Pa.1966); Kelly Girl Service, Inc. v. Roberts, 243 F.Supp. 225 (E.D. La.1965).

3. *Continental Motors*, supra; Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149 (9th Cir. 1963); American Foods. Inc. v. Golden Flake, Inc., 312 F. 2d 619 (5th Cir. 1963); Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F. 2d 495 (2d Cir. 1962); Chemical Corporation of America v. Anheuser-Busch, Inc., 306 F.2d 433 (5th Cir. 1962); Abramson v. Coro, Inc., supra; Pure Foods, Inc. v. Minute Maid Corp., supra.

4. *Continental Motors* and *American Foods*, supra.

5. *Continental Motors* and *Safeway Stores, Inc.*, supra.

6. *Safeway Stores, Inc.*, supra.

7. Continental Motors, supra; Day-Brite Lighting, Inc., v. Sta-Brite Flourescent Mfg. Co., 308 F.2d 377 (5th Cir. 1962); Keller Products v. Rubber Linings Corp., 213 F.2d 382, 47 A.L.R.2d 1108 (7th Cir. 1954).

8. *American Foods, Inc.*, supra.

9. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); Stork Restaurant, Inc. v. Sahati, 166 F.2d 348 (9th Cir. 1948); Villager, Inc. v. Dial Shoe Co., Inc., 256 F.Supp. 694 (E.D.Pa.1966).

10. Telechron, Inc. v. Telicon Corp., 198 F.2d 903 (3d Cir. 1952); *Villager, Inc.*, supra.

Relying on the pertinent sections of the Lanham Act, petitioner has introduced ample evidence to show that it is entitled to injunctive relief based on trade-mark infringement and unfair competition because of respondent's adoption and use, without consent, of a trade name which is deceptively similar to petitioner's registered service mark and trade-mark namely "Safeway." No authority is needed to support the proposition that the term "Save-Way" used by respondent is so alike in sound and appearance to petitioner's mark and name, "Safeway," as to cause and to be likely to cause confusion or mistake, or to deceive purchasers, when applied in connection with the sale of grocery products. The two terms are almost indistinguishable when heard over the news media or even printed in the newspaper.

Respondent has admitted that several inquiries were made to him concerning the connection between his business and that of petitioner. Affidavits filed in the record reveal additional instances of confusion on the part of people who have moved to Natchitoches from communities where Safeway stores were actually located. Further confusion is vividly illustrated by the damage suit filed against petitioner in the mistaken belief that petitioner and respondent were in fact connected in the grocery business.

Besides the uncontroverted instances of actual confusion mentioned above, a comparison of pictures of stores of the two parties shows that respondent uses block-type lettering that is extremely similar to that long in use by petitioner.[11] Exhibits introduced by petitioner graphically illustrate that advertisements in the local newspaper by respondent included an insigne similar to that registered to petitioner.[12] Enhancing the "likelihood of confusion" is the fact that the parties are engaged in the identical business of selling groceries at retail.

Because petitioner does not actually have a retail store located in Natchitoches, the Court now considers whether petitioner's trade name and mark have taken on what is commonly known as a "secondary meaning" within a geographic region.

There is little or no doubt that the term "Safeway" and the retail grocery business have become identified with petitioner's business in the public mind.[13] Petitioner has expended considerable sums in the advertising field on a national basis and this has reached the region and town in question. The fact that Safeway does not have a store in Natchitoches does not preclude granting the relief prayed for here because in Safeway Stores, Inc. v. Safeway Properties, supra, it was held that it is of no essence that the parties are not actually in geographic competition. Moreover, in the instant case there is a possibility of geographic competition because Natchitoches is in the area generally known as the "Ark-La-Tex" where numerous Safeway stores are located. An established trade name is entitled to protection not only in the area in which it already renders service or sells goods, but also to areas in which its trade reasonably may be expected to expand.[14]

Based upon the evidence presented and the principles of law applicable to this case, we find that respondent, a latecomer, has deliberately failed to avoid confusion, mistake or deception in this situation if doubt exists, and has failed to show the lack of doubt if none exists in fact. The evidence is overwhelmingly in favor of petitioner's position. No evidence has been presented by respondent and no brief has been filed on his behalf.

We therefore hold that an injunction should be issued restraining respondent, Wesley Stephens, d/b/a Save-Way Food Center and Save-Way Dairy Bar, from

---

11. See Plaintiff's Exhibits "F"—"N."

12. See Plaintiff's Exhibit "E."

13. Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2d Cir. 1962).

14. Tisch Hotels, Inc. v. Atlanta Americana Motor Hotel Corp., 254 F.Supp. 743 (N.D.Ga.1966).

use of the name Save-Way or any similar name or symbol which in any way might tend to, or be likely to, cause confusion, mistake or tend to deceive. Respondent is granted sixty days after receiving notice of the injunction to be issued herein within which to report in writing under oath the manner and form in which he has complied with our order.

Because petitioner claims attorney's fees in the amount of $10,000, the case will be held open on this issue alone and petitioner shall have sixty days from service of the judgment to be issued pursuant to this decision to present evidence in support of its claim to attorney's fees in a reasonable amount. A proper decree should be presented.