The VISION CENTER, Plaintiff,

v.

OPTICKS, INC., Will Ross, Inc., and G. D. Searle & Co., Defendants.

Civ. A. No. 78–2458.

United States District Court,
E. D. Louisiana.

Aug. 25, 1978.

William W. Messersmith, III, Lloyd N. Shields, New Orleans, for plaintiff.

Harry S. Hardin, III, Ewell E. Eagan, Jr., New Orleans, for defendants.

## MOTION FOR PRELIMINARY INJUNCTION

CASSIBRY, District Judge:

### INTRODUCTION

This is an action for injunctive relief by The Vision Center, a Louisiana partnership, against Opticks, Inc., a Texas corporation with its principal place of business in Dallas, Texas; Will Ross, Inc., a Delaware corporation with its principal place of business in Milwaukee, Wisconsin and G. D. Searle & Co., a Delaware corporation with its principal place of business in Skokie, Illinois. Plaintiff seeks to enjoin defendants from using the words "Vision Center" in the

name of three places of business about to be opened in the Greater New Orleans area under the name "Pearle Vision Center."

The action was originally filed in state court and was removed by the defendants to federal court on the basis of diversity of citizenship of the parties and the required jurisdictional amount involved. The court has jurisdiction by virtue of citizenship of the parties. 28 U.S.C. § 1332.

Plaintiff's demand for a preliminary injunction was tried by this court on August 10 and 11, 1978.

Having heard the evidence presented at trial, having reviewed the documents, photographs and other items introduced as exhibits, and having considered the arguments of counsel, I make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff, The Vision Center, is a Louisiana partnership organized pursuant to Articles of Partnership, dated September 15, 1967, effective as of October 1, 1967.

2. The trade name, "The Vision Center," has been in continuous and uninterrupted use in the Greater New Orleans area since May, 1955—a period of over twenty-three years—by plaintiff and its predecessor.

3. The first use of the trade name, "The Vision Center," in the New Orleans area was by Dr. Ellis Pailet, plaintiff's managing partner, who commenced using that name in May, 1955, as a sole proprietor engaged in the practice of optometry. Subsequently, Dr. Pailet hired other optometrists to work for The Vision Center, and, in September, 1967, he granted partnership status to some of the salaried optometrists. Pursuant to the Articles of Partnership, the partnership carried on the name, "The Vision Center." The partnership thereafter and without interruption continued, and still continues, the practice of optometry under that name.

4. The trade name, "The Vision Center," was first registered by Dr. Ellis Pailet with the Secretary of State of Louisiana under the Louisiana Trademark Law (R.S. 51:211

et seq.) on April 19, 1955. The registration was renewed on March 29, 1965, and again on February 14, 1975. The cost of the last renewal was borne by the plaintiff partnership.

5. The Vision Center, since its inception as a sole proprietorship in 1955, and from 1967 as a partnership, until the current time, placed its name before the public to the maximum extent allowed by the ethics of the optometric profession by use of eyeglass cases, lens wipers, lens cleaning solution, announcements of office openings, telephone book yellow pages, recall notices, letterheads, birthday cards, business cards, appointment notices, statements, other direct mailings and signs on and in front of offices. Over the years, The Vision Center has spent considerable sums on such items, and in the year 1977 alone spent over $30,000 for that purpose.

6. In 1978, since media advertising became permissible by optometrists, The Vision Center has advertised on radio and in newspapers and magazines. The Vision Center has, so far during the year 1978, spent about $15,000 for such "media advertising."

7. Plaintiff's volume of business has grown over the years and it has succeeded in expanding from one to six offices, with offices now located at 3901 Veterans Boulevard, Metairie, Jefferson Parish, Louisiana; 4301 Elysian Fields Avenue in the Gentilly section or neighborhood of New Orleans; 9235 Lake Forest Boulevard in the Eastern section of New Orleans, 2901 General De Gaulle Drive, in the Algiers section of New Orleans; Uptown Square, in the uptown section of New Orleans and Hammond Square, Hammond, Tangipahoa Parish, Louisiana.

8. Plaintiff is planning to expand its offices to: Slidell, St. Tammany Parish, Louisiana; Laplace, St. John the Baptist Parish, Louisiana; and to the Central Business District in New Orleans.

9. Plaintiff's market area includes the Louisiana Parishes of Orleans, Jefferson, St. Bernard, Plaquemines, St. Tammany,

Tangipahoa, St. Charles and St. John the Baptist.

10. Plaintiff is engaged in the practice of full scope optometry which includes complete visual analysis (including external and internal diagnosis of eye disease, and refractions) and includes dispensing of eyeglasses, contact lenses, eyeglass frames and other visual aids, and all things which optometrists are permitted by law to do.

11. The nature of plaintiff's profession is such that many patients seek out plaintiff as a result of patient and professional referrals. These referrals are normally made to "The Vision Center" or "Vision Center," rather than to a particular optometrist. However, when referrals are made to a particular optometrist, generally, the connection is made to identify that practitioner as a part of plaintiff's office (e. g., "See Dr. _____ at 'The Vision Center,' or at 'Vision Center' ").

12. Plaintiff has over the years obtained and presently obtains patients from its listings in the telephone book yellow pages and from signs on and in front of its offices.

13. During 1978, plaintiff's media advertising of its name has attracted business.

14. Plaintiff's name, "The Vision Center," is well established and is, and has been, well known to the public in its market area for over twenty-three years.

15. No one else in plaintiff's market area uses the combination of the words "Vision" and "Center."

16. There have been instances of confusion between plaintiff's name and the name of others in similar businesses using only the word "Vision" as part of the trade name, including mail being delivered to the wrong place; e. g., such confusion with "Vision Plaza."

17. There has been confusion between plaintiff's business and certain of defendants' Pearle Vision Centers; e. g., there was actual confusion in the mind of a witness who confused defendants' Biloxi, Mississippi facility as being a "Vision Center" connected with plaintiff, and there was confusion by someone who tried to have plaintiff, The

Vision Center, honor an eyeglass guarantee of defendants' Pearle Vision Center.

18. Plaintiff's partners first heard rumors that defendants may be opening facilities in the New Orleans area in August, 1977 and, through its attorney, wrote to defendants asking if this were the case. In March, 1978, defendants responded to that inquiry and informed plaintiff that they did intend to open such facilities.

19. By letter dated May 25, 1978, plaintiff, through its attorney, made formal demand on defendants not to use both the words "Vision" and "Center" in its trade name in plaintiff's market area, and by letter of June 21, 1978, plaintiff's attorney made a follow-up demand on defendants therefor.

20. Defendant G. D. Searle & Company is the parent corporation of defendants Will Ross, Inc., and Opticks, Inc. Opticks is considered Searle's "Optical Group" and is doing business under the names Vision Center, Pearle Vision Center, and other Vision Centers.

21. In 1969 Opticks, Inc., acquired a New York City company which had done business since 1952 under the name "Vision Center." This company continued to dispense optical equipment and services after its acquisition by Opticks, Inc.

22. Shortly after the acquisition, Opticks, Inc., began operating similar stores in other areas of the country using the words "vision center" as a trade name or in combination with a prefix.

23. In 1969 Opticks, Inc., was merged into Will Ross, Inc.

24. On July 28, 1970 Will Ross, Inc., registered the words "Vision Center" as a service mark in the principal register of the United States Patent & Trademark Office (No. 895,663). On November 17, 1975 affidavits pursuant to Section 8 and Section 15 of the Lanham Act were filed and accepted with respect to the service mark.

25. On July 13, 1971 Will Ross, Inc., registered the words "Vision Center" as a trademark on the principal register of the

U.S. Patent Office (No. 916,280). On November 23, 1976 a Section 15 Affidavit was filed with the U.S. Patent Office with respect to the trademark. On October 5, 1976 a Section 8 Affidavit was accepted by the U.S. Patent Office with respect to the trademark.

26. Opticks, Inc., was recently spun off as a separate corporate entity, and Service mark No. 895663 and Trademark No. 916,280 were assigned by Will Ross, Inc., to Opticks, Inc., as recorded in the U.S. Patent Office on October 1, 1977.

27. Defendant Opticks, Inc., owns and operates over 300 retail outlets for optical goods and services throughout the United States under the trade names "PEARLE Vision Center," "ROGERS Vision Center," and "HILLMAN–KOHAN Vision Center."

28. Defendants use, anywhere, of the words "Vision Center" as part of a trade name was subsequent to plaintiff's use of the words "The Vision Center" as a trade name—plaintiff and its predecessors having used it since May, 1955.

29. Defendants have not heretofore used the words "Vision Center" as part of a trade name in the plaintiff's market area.

30. Defendants are in the business of selling optical goods such as eyeglass frames and lenses, and employ opticians to fit and sell such eye-wear goods.

31. Defendants use eyeglass cases with only the words "Vision Center" within an oval imprinted on them. Plaintiff, since its inception and since the inception of its predecessor, has used, and now uses, eyeglass cases containing the words "The Vision Center." Defendants have not shown any intention to change their use of such eyeglass cases.

32. Defendants conduct national advertising using only the words "Vision Center" in magazine advertisements, in television commercials (e. g., now in Atlanta, Georgia, the television commercial uses just "Vision Center" more than once in the middle of it, and "Pearle Vision Center" at the end), on store signs, and in some of defendants' eyeglass warranty (guarantee) certificates.

33. Opticks, Inc., plans to open three outlets in the New Orleans area under the trade name "Pearle Vision Center" in the near future.

34. Defendants are locating their facilities as follows:

(a) One at 3544 Veterans Boulevard, Metairie, Louisiana, just six-tenths (0.6) of a mile from plaintiff's office located on the same street at 3901 Veterans Boulevard, Metairie, Louisiana;

(b) One at 4801 Chef Meteur Highway in the Gentilly section of New Orleans, just one and six-tenths (1.6) miles from plaintiff's Gentilly office located at 4301 Elysian Fields Avenue, New Orleans;

(c) One at 1523 Tulane Avenue, New Orleans, just three and eight-tenths (3.8) miles from plaintiff's Elysian Fields office.

35. The opening of the "Pearle Vision Center" stores will be extensively advertised on local television, radio, in newspapers, and in direct mail flyers.

36. Each Pearle Vision Center location will have a large exterior sign showing the company name in large white letters on a green background. One sign, for example, will be 28 ft. wide by 8½ ft. high. The word "Pearle" will be in white letters 33 inches high and directly below it will be the words "Vision Center" in 19 inch white letters.

37. Defendants have known of plaintiff's existence in New Orleans for many years.

38. Defendants, through one of the defendants' real estate departments, conducted a market survey of the New Orleans area prior to entering the market.

39. Prior to entering the market and expending funds in connection therewith, defendants knew of the locations of plaintiff's offices and knew that plaintiff intended to assert its rights to protect its name.

40. The combination of the words, or the phrase, "The Vision Center," i. e., plaintiff's trade name, is not generic or descriptive.

41. Plaintiff's trade name is suggestive of the business it is engaged in. It has come to be well known in plaintiff's market area by reason of its long usage of the name in the market, the valuable goodwill of the name and the identification of the name with plaintiff's business.

42. Even if plaintiff's trade name were descriptive, the evidence is clear that the trade name has acquired a secondary meaning, because after long use (twenty-three years) in the market area, the public has come to identify and associate the trade name with the plaintiff, and not with the services plaintiff renders. The words "The Vision Center" have come to mean in the minds of the public, the identity of plaintiff.

43. Actual confusion has been shown to exist between plaintiff's offices and some of defendants' facilities which are outside plaintiff's market area.

44. Actual confusion has been shown to exist between plaintiff's offices and other similar local offices using just the word "Vision" in the name.

45. There was uncontradicted testimony by independent witnesses that they would confuse defendants' new establishments to be called "Pearle Vision Center" and plaintiff's offices.

46. Persons who would go to The Vision Center by referrals or by reason of advertisements would be confused because of the similarity in names between plaintiff's, The Vision Center, and defendants', Pearle Vision Center, particularly since the locations established by defendants are in such close proximity to plaintiff's existing offices.

47. The use of the word combination of "Vision Center" by defendants in connection with their optical stores in the Greater New Orleans area is likely to cause confusion to the public and cause plaintiff to lose business.

48. Sometime ago, defendants initiated negotiations with plaintiff's partners to purchase The Vision Center.

49. The facts hereinabove set forth clearly establish that defendants are at-tempting to compete unfairly with plaintiff and to infringe upon plaintiff's long-established trade name and goodwill, some of which are: (i) defendants knew of plaintiff's long use of its trade name in the market; (ii) defendants attempted to purchase plaintiff's business; (iii) defendants obviously had knowledge of the value of plaintiff's long-established name and goodwill; (iv) defendants have and/or are locating their new facilities in plaintiff's market area (even on the same street and in the same neighborhood); and (v) the public already has been confused by defendants' out-of-the-market locations doing business as Pearle Vision Center.

50. The defendants have not successfully shown that the harm of an injunction to them outweighs the threatened injury to plaintiff.

## CONCLUSIONS OF LAW

1. Plaintiff, as first user of the trade name "The Vision Center" in its market area, has established a priority of appropriation in that market area. *Handy v. Commander*, 49 La.Ann. 1119, 22 So. 230 (1897); *Dynasty Room, Inc. (d/b/a Whiskey-A-Go-Go) v. Whiskey-A-Go-Go, Inc.*, 186 So.2d 402 (La.App. 4th—1966); and *Gallo v. Safeway Brake Shops of Louisiana, Inc.*, 140 So.2d 912 (La.App. 4th—1962).

2. By virtue of plaintiff's prior appropriation of the trade name and because a federal trademark and use of such trade name or mark in other locations cannot displace a locally acquired trade name, plaintiff has a proprietary interest in and a superior right to the trade name in its market area. *Dynasty Room, Inc. (d/b/a Whiskey-A-Go-Go) v. Whiskey-A-Go-Go, Inc.*, 186 So.2d 402 (La.App. 4th—1966); *American Trading Co. v. H. E. Heacock Co.*, 285 U.S. 247, 52 S.Ct. 387, 76 L.Ed. 740 (1932); and *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1919).

3. State law being applicable to this action, the plaintiff is entitled to injunctive relief upon a *prima facie* showing that irreparable injury would result absent

the injunction order. *Albrecht v. Del Bondio*, 188 La. 502, 177 So. 587 (1937); *see also Creppel v. Parish of Jefferson*, 352 So.2d 297 (La.App. 4th–1977), writ denied, La., 354 So.2d 201. However, even if federal trade name law is applied it is clear that plaintiff is entitled to the issuance of a preliminary injunction thereunder upon a showing that confusion is possible and likely. *P. Daussa Corp. v. Sutton Cosmetics, Inc.*, 462 F.2d 134 (CA 2–1972).

■ 4. The fact that the United States Patent Office accepted the trade name "Vision Center" for registration on its principal registry is *prima facie* evidence of "the distinctiveness" of "Vision Center" as a trade name. *Abercrombie and Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (CA 2–1976); *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 378 (CA 7–1976) *cert. denied* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94.

■ 5. I find that plaintiff's trade name is "suggestive" of the services and products it provides and is capable of, and entitled to, full trade-name protection. *Abercrombie and Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (CA 2–1976). It does not fall within those names denied trademark protection. The trade name is not generic. It does not name plaintiff's products or services. Nor is it descriptive of plaintiff's products and services.

The definitions of the words "vision" and "center" do not clearly imply a facility or group of facilities related to eye care and its associated products as defendants suggest.

"Vision" is defined as "The act or power of seeing: visual sensation or the capacity for it."

The word "vision" does not imply eye care services or products for the improvement of vision, and adding the word "center" to "vision" does not supply the implication.

The word "center" is defined as:

"a place, area, person, group or concentration marked significantly or dominatingly by an indicated activity, pursuit,

interest or appeal; . . . a concentration of requisite facilities for an activity, pursuit or interest along with various adjunct conveniences . . . [e. g.] shopping center, medical center, amusement center."

■ 6. Plaintiff has established that its trade name has acquired a secondary meaning, and accordingly, plaintiff's trade name, if descriptive, is capable of, and is entitled to, full trade name protection. *Handy v. Commander*, 49 La.Ann. 1119, 22 So. 230 (1897); *Kellogg Company v. National Biscuit Co.*, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); *American Aloe Corp. v. Aloe Cream Laboratories, Inc.*, 420 F.2d 1248 (CA 7–1970), *cert. denied* 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1971); *Beef/Eater Restaurants, Inc. v. James Burrough, Ltd.*, 398 F.2d 637 (CA 5–1968); *Safeway Stores, Inc. v. Stephens (d/b/a Save-Way Food Center and Dairy Bar)*, 281 F.Supp. 517 (W.D.La.–1967); *Kelly Girl Services, Inc. v. Roberts*, 243 F.Supp. 225 (E.D.La.–1965).

■ 7. Defendants' federally registered trade name is not incontestable as to plaintiff because plaintiff has established prior appropriation and use in the local market area; therefore plaintiff is entitled to full trade name protection. 15 U.S.C. § 1065 (The Lanham Act); *American Trading Co. v. H. E. Heacock Co.*, 285 U.S. 247, 52 S.Ct. 387, 76 L.Ed. 740 (1932); *Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312 (Cust. & Pat.App.–1976).

■ 8. Defendants' use of the term or phrase "Pearle Vision Center" in the Greater New Orleans area amounts to trade name and trade mark infringement and unfair competition; and the public is likely to be, and has been, confused by such use. *Handy v. Commander*, 49 La.Ann. 1119, 22 So. 230 (1897); *Boogie Kings v. Guillory*, 188 So.2d 445 (La.App. 3d–1966), *writ. ref.*, 249 La. 761, 191 So.2d 140 (1966); *American Trading Co. v. H. E. Heacock Co.*, 285 U.S. 247, 52 S.Ct. 387, 76 L.Ed. 740 (1932); *Beef/Eater Restaurants, Inc. v. James Burrough, Ltd.*, 398 F.2d 637 (CA 5–1968); and *Safeway Stores, Inc. v. Stephens (d/b/a*

*Save-Way Food Center and Dairy Bar)*, 281 F.Supp. 517 (W.D.La.–1976).

9. The use of a trade name or a part thereof by a latecomer after receipt of notice from the existing user that such use violated or would violate the existing user's trade name gives rise to a presumption of intent to deceive. *Kelly Girl Services, Inc. v. Roberts*, 243 F.Supp. 225 (E.D.La.–1965).

10. From the facts found, the Court concludes that the conduct of defendants constitutes fraud and that fraud can be "reasonably inferred" from the conduct and practices and proposed conduct and practices of defendants. The conduct and practices of defendants "amount to" fraud and are, at least, "tantamount" to fraud. *Straus Frank Co. v. Brown*, 246 La. 999, 169 So.2d 77 (1964); *T. G. I. Friday's, Inc. v. International Restaurant Group, Inc.*, 569 F.2d 895 (CA 5–1978); *T. G. I. Friday's, Inc. v. International Restaurant Group, Inc.*, 405 F.Supp. 698 (M.D.La.–1975).

11. The latecomer into the market area, in this case, the defendant, must bear the burden of avoiding confusion, mistake, and deception, and the defendant has failed to meet such a burden. *Telechron, Inc. v. Telicon Corp.*, 198 F.2d 903 (CA 3–1952); *Safeway Stores, Inc. v. Stephens (d/b/a Save-Way Food Center and Dairy Bar)*, 281 F.Supp. 517 (W.D.La.–1967); and *Kelly Girl Services, Inc. v. Roberts*, 243 F.Supp. 225 (E.D.La.–1965).

12. The expenditure of considerable sums of money by plaintiff (i) to advertise its name to the general public, (ii) to protect its acquired goodwill, and (iii) to protect its own exclusive use of its trade name, is a substantial element in the maintaining of its burden of proof, in showing that the issuance of a preliminary injunction is called for, to prevent irreparable injury. *Kelly Girl Services, Inc. v. Roberts*, 243 F.Supp. 225 (E.D.La.–1965); *Beef/Eater Restaurants, Inc. v. James Burrough, Ltd.*, 398 F.2d 637 (CA 5–1968).

13. Plaintiff will suffer irreparable harm and injury if defendants are allowed to commence business using the trade name, "Pearle Vision Center." Since the damages resulting from defendants' use of that name cannot be quantified, no award of damages could properly compensate plaintiff and, therefore, plaintiff has no adequate remedy at law. *P. Daussa Corp. v. Sutton Cosmetics, Inc.*, 462 F.2d 134 (CA 2–1972); *American Trading Co. v. H. E. Heacock Co.*, 285 U.S. 247, 52 S.Ct. 387, 76 L.Ed. 740 (1932); *Handy v. Commander*, 49 La.Ann. 1119, 22 So. 230 (1897); *Dynasty Room, Inc. (d/b/a Whiskey-A-Go-Go) v. Whiskey-A-Go-Go, Inc.*, 186 So.2d 402 (La. App. 4th–1966); *Louisiana Revised Statutes* 51:223.

The plaintiff's motion for preliminary injunction is GRANTED.